## Trunick *versus* Smith.

1. A railroad being a public highway, every owner of cars on it is in possession of his own cars on what part soever of the track they may be; such cars are not in possession of the company.

2. The right of the cars to remain on the track cannot be denied, subject to the regulations of the company as to the place they shall occupy when not in use.

3. McCormick owned a car, which was on a siding in charge of an agent of the company; he sold it to Trunick, who requested the agent to take charge of it for him, which the agent did, the car remaining on the siding as before. *Held*, that there was not such change of possession as would protect the car from McCormick's creditors.

4. The agent of the company did not become bailee of Trunick.

5. Deposit, as a bailment, implies an actual delivery of possession for a special purpose.

6. Leaving a car on a siding is not such a delivery as constitutes a bailment; it is only a constructive delivery, and this requires more to be done.

7. It must appear that there was an intention to transfer the possession.

October 25th and 26th.    Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Indiana county*: No. 153 to October and November Term 1868.

This was an action of trespass, d. b. a., by James Trunick

[Trunick v. Smith.]

against Joseph R. Smith (sheriff), issued July 24th 1862, for seizing and selling under an execution against John G. McCormick, a railroad truck claimed by the plaintiff to be his property.

The plaintiff gave evidence that about June 1st 1858 he had bought the truck from McCormick, who at that time lived in Allegheny county but had previously lived in Indiana county, carried on the lumber business there, and had used the truck for carrying lumber on the Pennsylvania Railroad and its Indiana branch. At the time of the sale to Trunick it was on a siding at Homer, Indiana county, and William Wilson, an agent of the Pennsylvania Railroad Company had charge of the truck for McCormick.

The plaintiff gave in evidence the following correspondence with Wilson:—

"Pittsburg, April 5th 1858.
Mr. Wilson,
Dear Sir:—As I intimated to you when I was at your place, I have sold my truck to Mr. James Trunick of Temperanceville. He requested me to inform you to that effect.
Yours truly, JOHN G. McCORMICK.
N. B. You will please inform me by return mail whether you received Mr. James Trunick's letter or not."

"Temperanceville, April 5th 1858.
Mr. Wilson,
Dear Sir:—I have purchased of John G. McCormick his eight wheel railroad truck, now standing on the siding at Homer Station, Indiana Branch, Pennsylvania Railroad. I therefore constitute you my agent. You will please hold the same in your possession, subject only to my order.
Yours respectfully, JAMES TRUNICK."

"Homer, Pa., April 13th 1858.
John G. McCormick, Esq.,
Dear Sir:—I drop you a line to let you know that Mr. James Trunick's letter of the 5th inst., was duly received, and the truck we will hold subject to his orders.
Yours respectfully, WESLEY WILSON." (son of William Wilson.)

"Pittsburg, May 26th 1858.
Mr. Wilson,
Dear Sir:—I have this day sold the railroad truck you have had in your care for me, to Mr. Alvin Pratt of this city, to whom or his order you will deliver the same, and if you will send to me a bill of your charges for your trouble of taking care of said truck you will oblige me.
Respectfully yours, JAMES TRUNICK."

[Trunick *v.* Smith.]

"Pittsburg, May 3d 1858.

Mr. William Wilson, Esq.,

Dear Sir:—There appears to be some difficulty respecting the railroad truck; the sheriff of Indiana county notified McCormick that he had levied on the truck, I gave him notice that I had bought the truck from McCormick and that I would hold him responsible if he sold. You will please inform me what action if any there has been taken in the matter.

- Yours respectfully, JAMES TRUNICK."

The defendant as sheriff levied on the truck and was notified by the plaintiff that it was his property.

The defendant gave in evidence three executions against McCormick to June and September Terms 1858 respectively amounting in the whole to $1226 and judgments in addition amounting to $265, besides costs. He also gave evidence that the truck lay at the Homer siding in the winter and spring of 1858 and remained there till the levy, when it was taken to Indiana by direction of the sheriff to be sold. There was evidence on both sides as to the bona fides of the sale by McCormick to the plaintiff.

The court, Buffington, P. J., after referring to the evidence and discussing the question of actual fraud; charged:

* * * " The remaining question is one of legal fraud. When there is a sale of personal property, susceptible of actual delivery, it must be removed in order to give notice to the world and especially to creditors of the vendors. The retaining of possession without any change in the situation or condition of the property, is a conclusive badge of fraud, so far as regards the claims of creditors. It is as a general rule a visible and notorious indication that there has been no change in the ownership. Fraud in the sale of personal property is frequently of difficult proof, and such sales are often resorted to, especially among confidential friends and near relatives, as a means of covering up the property from creditors. Where there is no fact to manifest a change of ownership it is eminently calculated to embarrass creditors and officers in their efforts to collect honest claims, and its tendency thus to hinder and embarrass has been adjudged to be within the provisions of the statute against fraudulent conveyances. A secret collusive sale may be easily proved by willing witnesses, but where exclusive possession has been transferred in pursuance of a sale, it is such a notorious act as puts the creditor upon his guard.

[" But is said that this truck, both before and after the sale by McCormick, was in the possession of the railroad company as a bailee, and therefore an actual change was not necessary. We cannot agree to this. The company cannot in any sense be considered a bailee. There was no privity of contract whatever be-

[Trunick *v.* Smith.]

tween the owner and the company. It is further contended that Mr. Wilson was a bailee. The witnesses say he was an agent and from the proofs as to the nature of his employment, we think that was his position, and that he did not occupy the character of a special bailee, having any right to control it, but merely to look after its safety.] * * *

["The jury will, therefore, say whether there was any change of the situation of the truck from where it was placed by McCormick or his order, or whether after such sale there was an actual transfer of the possession and position of the truck, or whether it remained as it had been before.]

"If there was no change of possession (and the jury will judge of this fact) the law pronounces it a legal fraud as to creditors, and the plaintiff cannot recover. There is very little discrepancy in the evidence as to the continuing situation of the truck. [It remained on the siding for months and continued so until levied upon by the defendant as sheriff. If the jury so believe and find the fact we think it was a legal fraud, and if so the verdict will be for the defendant.] If the jury, however, think differently and find the sale to have been a fair bonâ fide sale, with consequent change of possession, and that the contract with Pratt was after the levy, the plaintiff ought to recover."

The verdict was for the defendant.

The plaintiff removed the case to the Supreme Court and assigned the parts of the charge in brackets, for error.

*H. W. Weir* (with whom was *W. Banks*), for plaintiff in error.— Wilson was the bailee of Trunick of the truck: 2 Kent's Com. 723; the possession was therefore in Trunick as much as the nature of the chattel was susceptible of. He cited also Tompkins *v.* Saltmarsh, 14 S. & R. 275; Commonwealth *v.* Chathams, 14 Wright 181; Linton *v.* Butz, 7 Barr 89; Young *v.* McClure, 2 W. & S. 150; McBride *v.* McClelland, 6 Id. 94. The truck was in its nature cumbersome and all the change possession required by the law was made. Dunlap *v.* Bournonville, 2 Casey 72; Chase *v.* Ralston, 6 Id. 541; Steelwagon *v.* Jefferies, 8 Wright 407; Benford *v.* Schell, 5 P. F. Smith 393.

*H. White* and *H. D. Forster*, for defendant in error cited Milne *v.* Henry, 4 Wright 358; Dornick *v.* Reichenbach, 10 S. & R. 84; Carpenter *v.* Mayer, 5 Watts, 483.

The opinion of the court was delivered, January 3d 1870, by

Agnew, J.—This is a close case, and its solution depends upon the nature of the property, and the character of the possession at the time of the sale by the sheriff. The leading points are, that McCormick, in a division of property between him and his partner, became

[Trunick *v.* Smith.]

the owner of a railroad truck, which they had been running on the Pennsylvania Railroad. McCormick took it to Homer Station, and left it, in October 1857, in the care of Mr. Wilson, an agent of the railroad company. It was placed on the siding, and remained there for several months. In January 1858, McCormick sold it to Trunick, the plaintiff, in exchange for certain personal property. On or about the first day of April, Trunick's son communicated the fact of sale to Wilson, the agent. On the 5th of April 1858, McCormick wrote from Pittsburg, to Wilson, informing him of the sale to Trunick, and on the same day Trunick wrote from Temperanceville, to Wilson, stating his purchase of the truck, and constituting him his agent, to hold the possession. During all this time the truck remained on the siding, where it had been left in October, and was still there when Smith, as sheriff, made his levy on the truck, at the suit of McCormick's creditor. The court below charged that Wilson was a mere agent, not a bailee, and that, under the circumstances, the sale by McCormick to Trunick was a legal fraud.

Under the charter of the Pennsylvania Railroad Company, Pamph. L. 1846, p. 323, the railroad is made a public highway, which may be used by persons owning their own cars, the company furnishing the motive power. It is stated by the plaintiff in error, that the motive power had been furnished to McCormick and his partner, by special contract with the railroad company. Now, it is very clear, that the railroad, being a public highway, every owner of cars is necessarily in the possession of his own car, no matter on what part of the track it may happen to be. It cannot be deemed to be in possession of the railroad company, which only furnishes the motive power to haul the car over the track. Nor can the right of the truck or car to remain on the railroad be denied, subject to the regulations of the company as to the place it shall occupy when not in use. It was, therefore, the undoubted right of McCormick to leave the truck on the siding at Homer, in charge of the agent of the company, if not objected to by the company. The possession was clearly in McCormick, as the owner of the truck, when he ran it upon the siding at Homer, and it continued in him, unless it was changed by some notorious act, placing it under the control of some one else. The creditors of McCormick, finding that he had left it on the siding, in October 1857, had a right to believe the possession was still in him. Such was the nature of the property, and the right of its owner to the use of the railroad track, no other inference could be legally drawn; unless by removal and passing into the control of another, by some notorious act, the creditors were put on their guard that the possession was no longer in McCormick.

This brings us to consider the attitude of Wilson towards the property. Was he a bailee, in any proper sense? We think not.

[Trunick v. Smith.]

He was the employee or agent of the railroad company. The company must keep servants along the route of the road to enforce its rules and regulations, and see that cars at rest occupy proper places. Now, when McCormick left this truck-car on the siding, in care of Wilson, this was no delivery of possession to him. It was but an oversight or charge, to see that it remained in its proper place. He could not have maintained trespass or replevin for an injury or removal. The truck was left for no special purpose in Wilson's hands, but it remained on the track as it had formerly done, in the proper possession of McCormick. Had a creditor gone to Wilson, after January, and before April, and asked him whose truck it was, he must have replied McCormick's. Had he been asked if it were in his possession, or whether he had any special property in it, by delivery to him, he must have answered, he had not. He would have said, that McCormick had left the car standing on the siding. Blackstone, in his Commentaries, vol. 2, 451, defines a bailment to be a *delivery* of goods in *trust*, upon a *contract*, expressed or implied, that the trust shall be faithfully executed on the part of the bailee. This definition is adopted by Mr. Story, Bailments, s. 3, with the addition, that it must be for some *special object or purpose*. Chancellor Kent, in his Commentaries, vol. 2, sect. 40, gives the definition of Blackstone, with the addition: " and the goods restored by the bailee, as soon as the purpose of the bailment shall be answered."

Now, can it be said, with any propriety, that such a peculiar property as a railroad car, having a qualified right of possession of the railroad track, and incapable of being taken elsewhere, unless it might be to a private siding, is the subject of a bailment, in any just sense, by its being merely left on the siding of the railroad company, in charge of one of its servants? It is not possible for it to be a bailment of any species, unless it should be a deposit without reward. But, certainly, there was no intention to make a deposit with Wilson, in leaving the truck on the siding. Deposit, as a species of bailment, implies an actual delivery of possession, for a special purpose, as where the owner delivers for safe-keeping or for carriage to some person or place. It is evident, that to leave a railroad car on the siding, is not in itself a delivery. Delivery, in such a case, can only be constructive, and this requires something more to be done. It must appear that there was an intention to transfer the possession, but of this there is no evidence in the case, unless we hold that a mere oversight of the truck by the agent of the railroad company is to produce this effect. But, clearly, this was not the intention of McCormick. He was in possession, and he left the truck on the siding, just as an owner ordinarily would. He made no delivery to Wilson, formal or otherwise. The possession continued in him, after the sale to Trunick, in January. Nothing was done to evidence a change of

[Trunick *v.* Smith.]

possession until April, and then no removal took place, no notorious act of dominion was exercised by Trunick, but the truck remained just as it had been, on the siding, and so far as the world knew, the possession still continued in McCormick.    Under these circumstances, we perceive no error in the charge of the judge.

Judgment affirmed.

THOMPSON, C. J., and SHARSWOOD, J., dissented.