# Hestonville, Mantua and Fairmount Passenger Railroad Co. *versus* City of Philadelphia.

1. City passenger railways are included within the term "railroads" employed in the Act of May 16th 1861, and the provisions of said act relating to merger, apply to said railways.

2. A railway company laid down tracks on a street and used the same for seven years, then the double track was removed, and a single one laid which sufficed for the business of the road for the next ten years. The business again requiring the double track, the company proceeded to tear up the single track, to again re-lay the double one, when a bill was filed to restrain them on the ground that they had forfeited their right to re-lay this track by nonuser. *Held,* that there was no ground for forfeiture.

3. An absolute right, vested by legislation of the state, and assented to by the councils of a city, cannot be subverted by a city ordinance ; it cannot prohibit the enjoyment of a franchise solemnly granted.

February 20th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Appeal from the Court of Common Pleas, No. 1, of *Philadelphia county:* Of January Term 1876, No. 306. In Equity.

Bill in equity, filed by the City of Philadelphia against the Hestonville, Mantua and Fairmount Passenger Railroad Company, to prevent the defendant from laying a second railroad track on Callowhill street, in the City of Philadelphia.

The bill set forth,

I. That defendant was incorporated under an act, approved the 6th of April 1859, entitled, "An Act to incorporate the Hestonville, Mantua and Fairmount Passenger Railroad Company," and thereby obtained the right to lay passenger railway tracks in certain streets of the City of Philadelphia. II. That by an act entitled, "An Act to incorporate the Fairmount Passenger Railroad Com-

pany," approved the 13th of April 1858, the Fairmount Passenger Railroad Company was incorporated with power to lay out and construct a railroad in the city, upon a route designated in said act, including, inter alia, the right to lay a double track on Callowhill street, from Twenty-second street to Fairmount.   III. That in the seventh section of the act last referred to, it was provided that " before the said company shall use and occupy said streets, the consent of the councils of Philadelphia shall be first obtained ; * * * and said councils may from time to time establish by ordinances such regulations in regard to said railway as may be required for paving, repairing, grading, culverting and laying of gas and water pipes in and along said streets, and to prevent obstructions thereon."   IV. That councils, by " an ordinance relating to certain passenger railway companies," approved the 16th of April 1858, did ordain, in section first, that they thereby declared their disapproval of the aforesaid Act of April 13th 1858 ; and in section second, " That if any company in the said preamble named [including the said Fairmount Passenger Railroad Company] shall within ninety days from the passage of this ordinance, and before such company shall occupy any of the said streets or highways, file in the office of the city solicitor a written obligation, sufficient in law to bind such company, to observe and be subject to all the ordinances of the city in relation to passenger railways then in force, and thereafter to be passed, then the provisions of the first section of this ordinance, as to each and every such company as shall file such written obligation as aforesaid, shall cease to have effect."   V. That on the 5th of June 1858, the Fairmount Passenger Railroad Company did file in the office of the city solicitor such a written obligation.   VI. That on the 30th of May 1859 the defendant entered into an obligation with the city, by which, inter alia, it became bound well, faithfully and truly to comply with, observe and be subject to, all the ordinances of the Select and Common Councils of the City of Philadelphia, then in force, or thereafter to be passed, regulating passenger railways.   VII. That under " An Act to incorporate the Fairmount and Arch Street Passenger Railway Company," approved the 16th of April 1858, and a supplement approved the 24th of March 1859, the Fairmount and Arch Street Passenger Railway Company became entitled to, and shortly after the passage of the said supplement did, construct a single track along Twenty-second street, from Callowhill street to Hamilton street, and thence west along Hamilton street to Callowhill street.   VIII. That it was, inter alia, ordained in the second section of " an ordinance to regulate passenger railways," approved the 7th of July 1857, that passenger railroad companies within the city of Philadelphia should " submit all proposed plans, courses, styles of rails and the manner of laying the same, to the board of surveys and regulations for their approval and sanction, which

[Hestonville, &c.. Railroad Co. *v.* City of Philadelphia.]

shall be obtained before they proceed to break ground or occupy any of the highways" of the said city. IX. That in the first section of "an ordinance relating to the highways of the city of Philadelphia," approved the 28th of February 1860, it was, inter alia, ordained, "that it shall not be lawful for any person or persons, bodies corporate or otherwise, to remove any of the cobble pavements of the highways of the city, for any purpose whatever, without first procuring a permit from the department of highways, under a penalty of five hundred dollars for each offence, &c." And in the second section of the same ordinance: "That it shall not be lawful for the department of highways to grant any permit for the removal of any of the pavement of the city, as described in the first section, for the purpose of laying down rails for passenger railway purposes, until after first procuring the assent of the councils of the city thereto." X. That on the 21st of June 1858 the board of surveyors of the city approved a plan for the construction of the said Fairmount Passenger Railroad, which provided, inter alia, for a double track upon the said Callowhill street, from Twenty-third street to Fairmount, and shortly thereafter the said railroad company laid and constructed its road in the said Callowhill street, with a double track from the said Twenty-third street to Fairmount. XI. That the company defendant claim to have acquired, in the years 1864 and 1865, the rights and franchises of the said Fairmount Passenger Railroad Company, and the said Fairmount and Arch Street Passenger Railway Company, by merger and consolidation of the said three corporations under the name of the company defendant, and thereby to have acquired the right to construct, lay and use a double track upon Callowhill street, from Twenty-second street to Fairmount. XII. About the year 1865 the said company defendant abandoned, ceased to use, and removed, the double tracks above referred to, between Twenty-third street and Hamilton street, and instead thereof laid and constructed a single track in the middle of the said Callowhill street, between the points just before stated, which single track the said company have used from about the year 1865 to the present time, in connection with the said single track on Hamilton and Twenty-second streets. XIII. That the said defendant, on the 23d of April 1875, having and using at that time a single track in the said Callowhill street, between Twenty-Second and Twenty-fifth streets, under the power which they claim to have derived from the said Fairmount Passenger Railroad Company, as before stated, began to take up and remove the cobble stones from and along the said street, between the two points just before stated, for the width of twenty feet or thereabouts, for the purpose, and with the avowed intention, of constructing and laying a double track therein, and from the said Twenty-fifth street, along said Callowhill street to the Schuylkill river or thereabouts, and this, your orator is advised, they threaten and intend to do. XIV. That

[Hestonville, &c., Railroad Co. v. City of Philadelphia.]

in article 17, sect. 9, of the Constitution, it is provided : " No street passenger railway shall be constructed within the limits of any city, borough or township, without the consent of its local authorities." XV. That neither the said defendant, nor the said Fairmount Passenger Railway Company, have procured any permit from the department of highways, to remove the cobble pavement in the said Callowhill street, nor have the councils of the said city assented thereto. XVI. That the defendant have not submitted to, nor had approved by, the board of surveys, any " plans, courses, styles of rails, or the manner of laying the same," with reference to the construction of the said double track which they propose and threaten to lay as above stated. XVII. That even if it be true that the company defendant has acquired the rights and franchises of the said Fairmount Passenger Railroad Company, the company defendant have no rights or franchises under which they can now lay and construct a double track in Callowhill street, from said Twenty-second street to Fairmount, or between any intermediate parts, by reason of the fact that the said Fairmount Passenger Railway Company abandoned such rights or franchises about the year 1865, in the manner before stated in paragraph XII. XVIII. That the said company defendant are proceeding without authority of law to remove the cobble pavement from Callowhill street, and to construct a double track therein, in the manner before stated.

Your orator therefore needs equitable relief:

1. That the company defendant may be restrained until hearing, and perpetually thereafter from further tearing up or removing the cobble pavement in said Callowhill street, between Twenty-second street and Fairmount and from laying any other passenger railroad tracks thereon, other than the single pair of tracks which the said company used previous to the taking up and removal of the cobble pavement, which is above complained of.

2. That the defendant may be ordered and directed to replace the said pavement in the same condition in which it was before the removal thereof.

The bill was subsequently amended by adding to paragraph XI. the averment : " That the said merger and consolidation were not authorized by law, and they did not avail to invest the said company defendant with any of the franchises of the said two corporations alleged to have been consolidated with the said company defendant.

And by inserting as a new paragraph after paragraph XVII., the following, to wit :—

" That your orator is advised and therefore avers, that even if the said company defendant at any time had the franchise to lay a double track in said Callowhill street, from Twenty-second street to Fairmount, the said company by electing to remove the double track and to construct a single track in the place thereof (which

single track as before stated they used in connection with a track in Twenty-second and Hamilton streets), exhausted its franchises so far as it applied to the laying of rails in that part of Callowhill street, from which the double track was removed as before stated, and have now no power to replace such double track in the said street."

The answer of the defendants set forth:

1. That they were created by an Act of April 6th 1859, Pamph. L. 389, with the route therein described, with the power to lay out and construct a railway. By a supplement to said act, passed March 8th 1860, Pamph. L. 123, they were expressly authorized to lay out and construct their railway tracks, from the bridge at Fairmount to Callowhill street, and along Callowhill street to Delaware avenue, and to occupy such other street or streets as may be necessary to reach Twenty-first or Twentieth and Callowhill streets from said bridge. 2. Under these acts there was constructed a track from the bridge at Fairmount westwardly to Hestonville. 3. That by an Act passed April 13th 1858, Pamph. L. 257, there was created the " Fairmount Passenger Railway Company," with power to construct a passenger railway from the south side of Fairmount to Callowhill street; thence east on Callowhill to Twenty-third; thence south to Vine; thence east to second; thence south to Walnut or Dock; thence west to Third; thence north to Race; thence west to Twenty-second; thence north to Callowhill street, with a double track on Callowhill street, to Fairmount. Section 7 provided: " That before the said company should use and occupy the said street, the consent of the councils of the city of Philadelphia shall be first obtained." This consent was given. · 4. That by the Act of April 16th 1858, Pamph. L. 320, there was created, " The Fairmount and Arch street City Passenger Railway Company," with power to construct a passenger railway " commencing at Tenth and Arch and continuing westwardly along the same, with a double track to Twentieth and Twenty-first streets, respectively, with single track to Callowhill street, and thence westwardly with double track to bridge." Section 7 provided: " That before the said company shall use and occupy the said streets, the consent of the councils shall be first obtained." On May 5th 1858 (Ordinances of 1858, 177), the councils disapproved of the act and refused consent. By a supplement to the aforesaid act, passed March 24th 1859, Pamph. L. 234, it was enacted that said company should have full authority to construct and lay a passenger railway on the route hereinbefore stated. Section 3 provided, that " after the special consent of the councils, said company may, in lieu of two tracks on that part of Callowhill street which is between Hamilton and Twenty-second, construct one of their tracks on Twenty-second from Callowhill to Hamilton, and thence west on Hamilton street

to Callowhill street." That consent was given by an ordinance passed April 23d 1859 (Ordinance of 1859, 198). In accordance with the authority of said acts, railway tracks were laid on Twenty-second street, from Callowhill to Hamilton and thence west on Hamilton street to Callowhill street. 5. Callowhill street, from the bridge at Fairmount, is between curbs twenty-nine feet in width, and the existence of more than a double track at that point would sacrifice the other uses of the highway. If, therefore, the defendants exercised their right as a separate corporation, to lay a double track on Callowhill street between these points, and the Fairmount Passenger Railway Company sought to exercise theirs, and the "Fairmount and Arch Street City Passenger Railway Company" sought to exercise theirs, the whole width of the street would be occupied without space between each set of tracks. 6. Such an exercise of separate corporate discretion and right would be impossible of execution, as cars could not pass each other, and therefore the several companies did by agreements arrange such running of their cars over the tracks actually laid by the Fairmount Passenger Railway Company and by the Fairmount and Arch street City Passenger Railway Company, as secured to each their separate circuits, the integrity of the several franchises and the accommodation of the passengers seeking the cars of either. The former company have laid a track from the bridge, along Callowhill street to Twenty-third street; and the latter company have laid a track from the bridge, along Callowhill street to Hamilton, and thence eastwardly along Hamilton to Twenty-second street. These are the tracks now in existence and now used. 7. That by reason of an entire alteration of grades, caused by the construction of the double-decker bridge at Fairmount and of the necessities of public travel, they have become convinced that the franchise of a double track on Callowhill street must be maintained. Accordingly they have made arrangements to remove the tracks laid by the Fairmount Passenger Railway to the side of said Callowhill street and to lay another track beside it on their own behalf. The effect of this would be that the double tracks now existing on Callowhill street, from the bridge to Hamilton street would be continued eastward on the same alignment.

Respondents admit the truth of the first five paragraphs of the bill. Respondents deny that they entered into an obligation as averred in the sixth paragraph of said bill; but are advised that it is immaterial, inasmuch as the tenor of such an obligation would only be that respondents should comply with such ordinances as it was within the power of the city of Philadelphia to pass. Respondents admit the truth of the seventh paragraph of said bill, and that the averments in the eighth paragraph are true; but respondents are advised that said ordinance, so far as the same is now valid, applies exclusively to the original construction, and that in the case

[Hestonville, &c., Railroad Co. *v.* City of Philadelphia.]

of entire compliance therewith, the purpose thereof is fully met; and respondents do say that their charter does not confer any power on the plaintiffs to regulate or control them on Callowhill street, east of the bridge at Fairmount. And respondents are advised that the assent of the General Assembly is sufficient and ample, and that no provision of their charter subjects them to a further assent by the councils of the city of Philadelphia to the use of Callowhill street. Respondents admit the truth of paragraph nine, but are advised that said ordinance is not passed pursuant to the conditions of the Act of April 11th 1868, as above cited; and that as its purpose was to secure the assent of the councils of the city to remove the cobble stones of the highways, it cannot apply to a body corporate, whose occupation and use of streets for the purposes of their chartered route had already been assented to. Respondents admit the truth of paragraph ten, and of paragraph eleven: but are advised that the same is immaterial as to the subject-matters of this bill of complaint, inasmuch as these respondents, without such merger and consolidation, have the grant as aforesaid to lay the track on Callowhill street now proposed.

And respondents say, that if paragraph twelve in said bill means to aver the fact differently from that stated in the general paragraphs of this answer, then they deny the same to be so. Defendants have never surrendered any portion of their franchise to the Commonwealth; that as the chartered powers of defendants do not limit the construction of their road to any term, that completion thereof, or the change of the mode of running, is for their discretion, as the owners of the franchise; and even though this were not so, plaintiffs have no standing in this court to assert a loss of franchise by non-user, this being wholly for the Commonwealth, at her own relation.

The case was argued upon bill and answer, and the court below, Allison, P. J., without filing an opinion, entered a decree "that defendants be perpetually enjoined from laying any other passenger railroad tracks on Callowhill street, between Twenty-second street and Fairmount, other than the single track which is now laid thereon and used by them."

This decree was assigned for error by the company which took this appeal.

*William E. Littleton, David W. Sellers* and *Isaac Hazlehurst,* for appellants.—We are within the Act of May 16th 1861. We are a railroad company. The merger was recognised by the city. Three roads had a right to lay their tracks on Callowhill street. Each of the three roads had the authority of the city to lay one track. We represent the consolidated road, and instead of laying three tracks we laid one on Hamilton street, and were proceeding to lay two on Callowhill when we were restrained. We have not lost our right by non-user. An express grant is not lost because it

[Hestónville, &c., Railroad Co. v. City of Philadelphia.]

is *temporarily not acted upon. Because we once took up the track does not estop us from laying it down again. So long as we keep within the prescribed limits we can change our alignment*: Snyder v. Pennsylvania Railroad Co., 5 P. F. Smith 340. *A permit was not necessary. We had once obtained the assent of councils to the use of the streets, and with that assent its power ended to control the franchise:* Masser v. Arch Street Railway Co., 3 Am. Law Reg. 284.

*C. E. Morgan, Jr.*, Assistant City Solicitor, and *Wm. Nelson West*, City Solicitor, for the city.—The merger was unlawful and the appellant did not thereby acquire any of the franchises of the Fairmount Passenger Railway Company. The Act of 1861 does not apply to city passenger railway companies: City v. Thirteenth and Fifteenth Streets Passenger Railway Co., 8 Phila. R. 651. But if the merger was lawful, the Fairmount Passenger Railway Company had exhausted their right to lay a track on said street.

It is not possible that their grant entitled them not only to lay one track, but also as many others as they pleased, to take up that laid down, and to substitute another for it, and again, to remove the new track, and to put down still another, similar to that originally laid.

The right to lay their tracks was made conditional upon the consent of councils. Councils assented simply to the construction of the track first laid down. Their assent was also qualified by conditions, making the road subject, not only to ordinances then in force, but also to those which might thereafter be passed. The ordinance of February 28th 1860, expressly prohibits the removal of the cobble pavements of the city without a permit from the department of highways of the city, and also forbids that department to grant any such permit for the purpose of laying down rails for passenger railway purposes until after the assent of councils thereto. No permit has been granted to the appellants, nor have councils assented thereto.

Mr. Justice TRUNKEY delivered the opinion of the court, May 5th 1879.

The Act of April 6th 1859, and its supplement of March 8th 1860, incorporating the Hestonville, Mantua and Fairmount Passenger Railroad Company, gave it no power to construct a double track on Callowhill street. By the original act the company was authorized to lay a double track on designated streets, and a single track on others; and the latter authorized construction of their tracks across the Schuylkill and along Callowhill. According to familiar rules, the right granted by the supplement was to lay a single track.

Section 3 of the Act of 24th March 1859, permitted the Fairmount and Arch Street City Passenger Railway Company to elect

[Hestonville, &c., Railroad Co. *v.* City of Philadelphia.]

to construct one of their tracks on Twenty-second and Hamilton streets, in lieu of two tracks on that part of Callowhill between Hamilton and Twenty-second; and the company so elected and laid their tracks.

The Fairmount Passenger Railroad Company was incorporated by Act of April 13th 1858, with power to construct a double track on Callowhill from Fairmount to Twenty-second street. Upon specified conditions, the councils of the city gave the requisite assent as prescribed in the act. On June 21st 1858, the Board of Surveyors of the city approved a plan for construction of the Fairmount Railroad, with double track on Callowhill street, and shortly after said double track was laid. Early in 1865, under the Act of May 16th 1861, " relating to railroad companies," the Fairmount Passenger Railroad Company and the Fairmount and Arch Street Passenger Railway Company were merged into the company appellant, and the three were thereby consolidated. Afterwards, in the same year, the appellant took up said double track and laid a single one in the middle of the street, which they used till April 23d 1875. On that day they began to take up and remove the cobble stones from said street for the purpose and with the avowed intention of laying a double track therein; whereupon this suit was commenced and the work enjoined. It is not charged, and, of course, could not be, or it would have been, that the plan of the double track proposed to be constructed differs from the one which was duly approved and laid in 1858 and removed in 1865. The answer avers that by reason of the alteration of grades caused by construction of the double-decker bridge and the increased public travel, it is necessary that the franchise of a double track be maintained.

The Fairmount Passenger Railroad Company had right to lay a double track on Callowhill street, which was promptly done and the track used for seven years. Then followed a period of ten years during which a single track being sufficient for the business, the double one was removed. Their charter required no continuous use of a double track on pain of forfeiture of the right. The public interests, either of the city at large or of the portion adjoining and near the street, were not prejudiced. There has been no attempt to enlarge the power originally granted, or to vary the location of the double track as first laid, nor such frequent changes as to give just cause of complaint. Hence, there are no peculiar circumstances calling for unusual strictness of adjudication on account of misuse or non-user. And, if there were, this bill would not authorize a decree of forfeiture: Slee *v.* Bloom, 5 Johns. Ch. 379. However, we are of opinion that there is no ground for holding a forfeiture of the right to a double track for non-user.

An absolute right, vested by legislation of the state and assented to by the councils of the city, cannot be subverted by city ordi-

nances. The franchise is not held at the mercy of any one. It is not now necessary to speak of the extent of the power of the city to regulate and control the operations of passenger railways. The ordinances set forth in the bill may be valid. Possibly the company may incur a penalty of $500 for each offence of removing cobble pavements for the purpose of relaying a double track as they first laid it under the city's sanction. Be that as it may, we are not convinced that they should be prohibited the enjoyments of a franchise solemnly granted.

The learned counsel for the city contend that the Act of May 16th 1861, entitled " An Act relating to railroad companies," must be regarded as a portion of the General Railroad Law, authorizing roads to be built where none was built before ; generally through the country, requiring bridges, cuttings and fillings, and sometimes tunnels through hills and mountains ; dealing with a distinct subject which existed before passenger railways came into use, while the latter, unlike a railroad, always contemplates a track laid upon an established road, is always restricted to the bounds of a city or town and its immediate vicinity ; and, in the law, a distinction has always been made between railroads and railways, the former term being applied to subjects of the General Railroad Law, and the latter to passenger railways in cities. Their argument is, at least, plausible, but we are not satisfied that it is free from error. In 1861, all railroads were incorporated by special laws, and in so far as each law did not prescribe specially, reference was made to the provisions of the Act of February 19th 1849. This was common in charters for passenger railroads, as well as others. In the statutes, one class was generally styled railroads, and the other more frequently, but not always, railways. These words are popularly used as synonymous, and Webster defines both alike, but this matters little. A slight examination will show that the legislature did not use the words in a distinctive sense. On the same date of the act, in consideration, the " Philadelphia and Delaware River Railroad Company" was authorized to lay passenger tracks on certain streets in Philadelphia, thereby combining both classes in one corporation. Also, same day, a supplement to the charter of the " Philadelphia and Olney Railroad Company" was passed, which company was incorporated April 1st 1859, with right to lay their tracks on specified streets and highways and connect with passenger railroads. In 1859 the " Pittsburgh and Birmingham Passenger Railroad Company" was incorporated. Also the " Passenger Railroad Relief Association of Philadelphia." Two of the three companies consolidated into the company appellant are " railroads." These instances sufficiently indicate that the legislature indiscriminately used the words in their popular sense. It is true that railroads were used in the country prior to their use on the streets of towns, and that many differences necessarily exist in their regulation and

[Hestonville, &c., Railroad Co. *v.* City of Philadelphia.]

management. It is useless to name points of likeness and unlikeness, for there are many of each. And these vary in the same road when one part is in the country and the other in a city. Recently narrow gauge railroads have been introduced, not laid on streets of cities, nor tunnelled through hills and mountains, but running over the latter. All three kinds are railways—are railroads. Then, as respects the title of the Act of 1861, it embraces railways on streets as well as those through or over hills and mountains. It is equally comprehensive in its provisions, not one of which is inapplicable to any class of railroads. Not an incongruous clause has been pointed out, considered in relation of proceedings for merger of city passenger railway companies. The right of consolidation is limited to connecting roads. Not in the title, nor in the body of the act, is anything discoverable why its benefits should be confined to a class instead of embracing all. We were not informed at the argument of any extraneous cause for holding that one class was without the legislative intendment.

Mergers have been made of passenger railway companies and new corporations formed thereby, under this statute. The proper state officers filed the agreements and certificates. No one has directly questioned the right of such new corporations to hold property and transact business. Very likely many citizens would severely suffer if all these organizations are void. While the hardship resulting from their mistake, if mistake it was, is no reason for improperly placing them within the intendment of the statute, it is a reason for careful inquiry into the meaning of the law, and not excluding them from its operation by a forced construction against its letter and apparent spirit.

Decree reversed, and now it is adjudged and ordered that the bill be dismissed, the appellee to pay costs below and of this appeal.