## In re Pennsylvania Company.

*Corporations—Bonus on capital stock—Nature—Change of rate—Railroad companies—Exemption—Acts of May 1, 1868, April 18, 1874, April 29, 1874, May 22, 1878, June 15, 1897, May 3, 1899, and Feb. 9, 1901.*

1. A bonus upon capital stock is not a tax, but is a consideration paid to the Commonwealth for a right, privilege or franchise.

2. The Act of May 1, 1868, P. L. 108, was the first general act imposing a bonus upon the grant of corporate franchises and upon increases of capital stock. It was of general application to all corporations except railroad, canal, turnpike, bridge or cemetery companies and companies incorporated for literary, charitable or religious purposes.

3. The Pennsylvania Company, chartered by Special Act of April 7, 1870, P. L. 1025, was given very broad corporate powers, including the right to construct, operate, lease and manage railroads and to buy and sell their stock and bonds. The charter contains no provision as to bonus or exemption from making payment thereof. The company is exclusively engaged in the business of operating and managing, by means of leases and ownership of their stocks and bonds, a number of railroads.

4. In 1868 the term "railroad companies" applied, in both popular and legal acceptation, to companies incorporated for the purpose and exercising the franchise of constructing or owning and operating a railroad. It did not include a company which merely leased or controlled railroads constructed and owned by others.

5. The exemption of railroad companies from liability for payment of bonus under the Act of 1868 was for the purpose of attracting capital to the construction of railroads and in order to encourage such improvements. Exemption of leasing companies was not contemplated, since it would not have served the purpose for which exemption was granted.

6. The Pennsylvania Company is liable for payment of the bonus on its capital stock and increases thereof, and is not exempt as a "railroad company."

7. The rate of bonus to be charged is a legislative question; it is not, in the nature of a continuing contract, protected against change by the constitutional prohibition against impairing the obligation of contracts.

8. The rate to be paid by any corporation is to be determined from the legislation applicable to that particular class of corporation at the time. The Act of May 1, 1868, P. L. 108, was not repealed by the Acts of April 18, 1874, P. L. 61, April 29, 1874, P. L. 73, May 22, 1878, P. L. 97, and June 15, 1897, P. L. 155. The Act of May 3, 1899, P. L. 189, changed the rate of charge from one-quarter to one-third of one per cent., and applies to increases of capital stock authorized after May 3, 1899. The Act of Feb. 9, 1901, P. L. 3, makes the determination of the amount of bonus to be paid depend upon the actual increase of capital stock as distinguished from the authorized increase, but no change is made in the rate of the charge which remains as fixed by the Act of 1899.

Attorney-General's Department. Opinion to Hon. Samuel S. Lewis, Auditor General.

HULL, Dep. Att'y-Gen., June 14, 1922.—The Attorney-General is in receipt of your communication, requesting an opinion as to the liability of the Pennsylvania Company for bonus upon its original capital stock and subsequent increases thereof. If it were liable for bonus upon all of its capital stock, it should have paid to the Commonwealth $249,166.68, of which it has paid only $93,333.34, leaving a balance due of $155,833.34. The company, however, contends that it was not liable for the payment of bonus upon any of its capital

In re Pennsylvania Company.

stock, that the amount already paid was erroneously paid, and that it should receive credit for $93,333.34.

The facts upon which the alleged liability to the Commonwealth is based are set forth in the following tabulated statement:

(Copy)

## BONUS ON CAPITAL STOCK.
### PENNSYLVANIA COMPANY,
In Account with the Commonwealth of Pennsylvania.

| Date of Incorporation or Increase | Dr. | Capital Stock | Bonus @ ¼ of 1% | Instalments | When Due | Date of Payment | Cr. |
|---|---|---|---|---|---|---|---|
| 4/ 7/1870 | Original Capital.... | $100,000 | $125.00 | | | 5/ 7/1870 | $125.00 |
| 1/20/1871 | Increase in Capital.. | 11,900,000 | 29,875.00 | $14,875.00 | | 7/18/1871 | 14,875.00 |
| | | | | 15,000.00 | | 4/ 1/1872 | 15,000.00 |
| 3/21/1881 | " " " | 8,000,000 | 20,000.00 | | 4/21/1881 | | |
| 5/15/1892 | " " " | 1,000,000 | 2,500.00 | | 6/15/1892 | | |
| | | | @ ⅓ of 1% | | | | |
| 10/31/1901 | " " " | 19,000,000 | 63,333.34 | | | 11/11/1901 | 63,333.34 |
| 10/31/1902 | " " " | 40,000,000 | 133,333.34 | | 11/31/1902 | | |
| Totals...... | | $80,000,000 | $249,166.68 | | | | $93,333.34 |
| Total Bonus Due........ | | | $249,166.68 | | | | |
| Total Bonus Paid........ | | | 93,333.34 | | | | |
| Balance Due Commonwealth...... | | | $155,833.34 | | | | |

The Pennsylvania Company was incorporated by Special Act of April 7, 1870, P. L. 1025. The 1st section conferred upon the incorporators the right

2 D. & C.

to form and be a body corporate, with the usual incidents of corporate existence, to receive, hold and enjoy property, real, personal and mixed, and to convey, lease, mortgage or pledge the same for its corporate purposes. This act gave to the company an "omnibus" charter. The many and varied powers conferred are too numerous to be here set forth at length. They may be found in sections 2, 3 and 4 of the act. The broad scope of these powers is indicated in the opinion of the court in International Navigation Co. v. Com., 104 Pa. 38, which involved a charge for bonus against a company upon which all of the powers of the Pennsylvania Company had been conferred by Act of May 4, 1871, P. L. 565. Among them is included the power to construct and operate railroads, to buy and sell the stocks and bonds of railroad companies, to lease, manage and operate railroad properties, and to exercise the right of eminent domain for the purpose of erecting or managing any public works.

Section 5 provided, *inter alia*, that "The capital stock of said company shall consist of 2000 shares of the value of $50 each, being $100,000, and with the privilege of increasing the same, by a vote of the holders of a majority of the stock present at any annual or special meeting, to such an amount as they may from time to time deem needful; . . . and whenever an increase of capital stock is made, a certificate thereof, duly executed under the corporate seal of the company and signed by the president and secretary, shall be filed with the Auditor General before the same shall be deemed to be valid."

The company began business in the year 1871, and since then has been "exclusively engaged in the business of operating and managing, by means of leases and ownership of their stocks and bonds, a number of railroads, some wholly within and others wholly without, and most of them partly within and partly without, the State of Pennsylvania, and of extending and improving said railroads, . . . and it was not during said period of time exercising any other franchise:" Com. v. Pennsylvania Co., 145 Pa. 266, 270. "The Pennsylvania Company obtained its charter in 1870, completed its organization in 1872, and entered at once upon active business as a lessee of lines of transportation built and owned by existing corporations:" Williams, J., in same case, at page 276.

The company has not at any time been "engaged in any other business than that of operating and managing railroads under the provisions of its act of incorporation, and at no time during said period did it make any increase of its capital stock except in accordance with the provisions of its act of incorporation, relating to the making of increases in capital stock; it did not accept the Constitution of the State of Pennsylvania of 1873, and in particular it did not accept the benefits of, or act under, the Statute of Feb. 9, 1901, P. L. 3, and the provisions thereof relating to the increase of capital stock." (Affidavit of the secretary of the company.)

Under these facts, the company contends that it is not, and was not, subject to the payment of bonus upon its original capital stock or any of the increases thereof, for the reason that there was no statute passed prior to its incorporation which imposed a bonus upon it, that the act of incorporation did not do so, and that it is not subject to the provisions of any of the bonus acts passed since 1870.

It is well settled that a bonus is not a tax, but is the consideration paid to the Commonwealth for a right, privilege or franchise. Therefore, a privilege or franchise, which has been granted free of bonus and accepted and exercised by the grantee, cannot, under the State and Federal Constitutions, be subjected to such a charge by a subsequent act of assembly, for such an act

would impair the obligation of the contract: Com. *v.* Erie and Western Transportation Co., 107 Pa. 112. If the Pennsylvania Company acquired its original franchises free of bonus, has acquired no others since its incorporation, and has not subjected itself to the provisions of subsequent bonus acts, then its contention is sound and must be sustained. Accordingly, the first inquiry is whether its original franchises were granted free of bonus.

The first general act imposing bonus upon the grant of corporate franchises and upon increases of capital stock was the Act of May 1, 1868, P. L. 108, which was in force when the Pennsylvania Company was incorporated, and which provided in section 15 as follows: "That hereafter every company incorporated by or under any general or special law of this Commonwealth, except railroad, canal, turnpike, bridge or cemetery companies, and companies incorporated for literary, charitable or religious purposes, shall pay to the State Treasurer, for the use of the Commonwealth, a bonus of one-quarter of 1 per centum upon the amount of capital stock which said company is authorized to have, in two equal instalments, and a like bonus upon any subsequent increase thereof. The first instalment shall be due and payable upon the incorporation of said company, or upon the increase of the capital thereof, and the second instalment one year thereafter; and no company, as aforesaid, shall have or exercise any corporate powers until the first instalment of said bonus is paid; and the Governor shall not issue letters-patent to any company until he is satisfied that the first instalment of said bonus has been paid to the State Treasurer; and no company incorporated by any special act of assembly shall go into operation or exercise any corporate powers or privileges, nor shall said act be enrolled among the laws of the State until said first instalment of bonus has been paid as aforesaid."

The act incorporating the Pennsylvania Company (April 7, 1870, P. L. 1025) was silent upon the subject of bonus, but the act from which I have quoted above imposed a bonus upon all companies incorporated after May 1, 1868, whether under general or special act, excepting railroad, canal, turnpike, bridge, etc., companies. The first inquiry — whether this company received its original franchises free of bonus—thus depends upon whether it was a railroad, canal, turnpike or bridge company, within the meaning of those terms as used in the Act of 1868.

If this inquiry were to be determined by merely asking whether this company possessed the franchises of a railroad company, it would have to be admitted that it was a railroad company, and likewise that it was a canal company, a turnpike company and a bridge company. But it is not of so much consequence what franchises the company possessed, but what franchises it actually employed in the transaction of its business: International Navigation Co. *v.* Com., 104 Pa. 38.

If the character of the franchises possessed were a controlling consideration, it might indeed be urged that the Pennsylvania Company and eleven others which received similar grants of omnibus powers between 1870 and 1873 were, by the very breadth of the franchises conferred, placed in a class by themselves, so that they could not properly be considered as belonging to any of the specific classes exempted from bonus by the Act of 1868. But in the view which I take of the character of this company as evidenced by the franchises actually used, it is not necessary to consider this question. I am of the opinion that this company was not a "railroad company" within the meaning, purpose and intent of the exemption contained in the Act of 1868.

2 D. & C.

In re Pennsylvania Company.

The term "railroad company" does not have a distinct, independent and precise meaning in itself: Hestonville, &c., R. R. Co. v. Philadelphia, 89 Pa. 210; Gyger v. Railway Co., 136 Pa. 96; Rafferty v. Central Traction Co., 147 Pa. 579. When used in a particular statute, its meaning must be determined from a consideration of the nature and purpose of the act, the context in which it is used, and the legal acceptation of the term at the time the statute was enacted.

Both the popular and the legal meanings of this term have widened and extended with the growth of the railroad industry and the development of the laws relating to it. The first charter granted by the Legislature of Pennsylvania to a railroad company was the Act of March 31, 1823, P. L. 249, which incorporated "The president, directors and company of the Pennsylvania Rail Road Company." Throughout this act the term is written "rail road," not "railroad," and this is to be observed also in the Act of April 4, 1833, P. L. 144: "To authorize the Governor to incorporate the Philadelphia and Reading Rail Road Company." These companies were incorporated, as turnpike companies were chartered, for the purpose of building and maintaining an artificial road which should be a public highway, open to the use of any who might choose to operate their cars upon it. This company never built its road and its charter was repealed. However, during the thirty years, 1826-1856, the Commonwealth, in addition to granting charters to many companies to construct similar roads, undertook itself the building of an extensive system of internal improvements, including railroads, canals and inclined planes. "As the road was intended to be operated by horse-power, and so used for several years, the space between the rails of each track was filled in with broken stone or gravel to form a horse-path. All the cars for both passengers and freight were owned by individuals or transportation companies, who furnished their own teams of horses or mules, and paid to the State for the use of the road the rates of toll established by the Canal Commissioners. After steam motive-power was provided by the State, an additional rate was paid by those transporters who availed themselves of it. (Wilson—"Internal Improvements of Pennsylvania," page 37. Published by Railway World, Philadelphia, 1879.) Interesting questions which arose out of the status of the rail road in these early days are discussed in Lake Superior & Mississippi R. R. Co. v. United States, 93 U. S. 442, 23 Law ed. 965 (1877); Boyle v. Philadelphia & Reading R. R. Co., 54 Pa. 310 (1867); Trunick v. Smith, 63 Pa. 18 (1869).

As the industry developed, these companies were first given the power "to prescribe the kinds and descriptions of cars, carriages or wagons to be used" (see Act of April 4, 1833, § 20, P. L. 144), and then "the exclusive control of the motive-powers" (see Acts of April 13, 1846, § 21, P. L. 312, and Feb. 19, 1849, § 18, P. L. 79). Contracts which provided for interchange of traffic between companies owning connecting roads were authorized: Acts of March 13, 1847, P. L. 337, March 29, 1859, P. L. 290, and April 11, 1864, P. L. 393. The power to execute leases of railroads, when given, was limited to leases between companies which already owned connecting roads, and a like limitation was placed upon the power to purchase and hold the stocks and bonds of other roads: Acts of April 23, 1861, P. L. 410, May 1, 1861, P. L. 485, and April 14, 1868, P. L. 100.

During the period from 1823 to 1868 two general acts were passed relating to the organization of railroad companies—the Act of Feb. 19, 1849, P. L. 79, which prescribed the duties and powers of companies theretofore or thereafter incorporated under any special act of assembly, and the Act of April 4, 1868,

In re Pennsylvania Company.

P. L. 62, which provided a general method for "the formation and regulation of railroad corporations." "The object for which the Act of 1868 was passed is unmistakable. It was to vest in voluntary associations of individuals, under definite, uniform and general rules, powers which had previously been given only by special acts of incorporation. It applied to railroad companies in the sense in which the term had always been commonly employed. Passenger railways were expressly excluded from its operation. The companies to be chartered under it were made subject to the provisions of the General Railroad Law of 1849: . . ." Woodward, J., Edgewood R. R. Co.'s Appeal, 79 Pa. 257, 269.

A railroad company, both in the popular and legal acceptation of the term as used in 1868, was a company incorporated for the purpose and exercising the franchise of constructing or owning and operating a railroad. It was a company belonging to the class to which the Acts of 1849 and 1868 (April 4th) related. It did not include one organized for or exercising merely the franchise of leasing or controlling by means of stock ownership the railroads of other corporations. Such powers had not been granted to any corporations excepting such as already owned connecting lines.

In this connection, it is to be observed also that the Act of May 1, 1868, P. L. 108, which exacted a bonus from corporations generally, was approved just twenty-six days after the General Railroad Act of 1868, and undoubtedly the legislature, when it exempted railroad companies from liability for bonus, had in mind the companies having and using the franchises conferred by that act, and not companies which, under later acts, might be incorporated with broader and different powers: Com. v. Pennsylvania Water and Power Co., 23 Dauphin Co. Reps. 10, affirmed in 271 Pa. 456.

A consideration of the purpose of the exemption leads to the same conclusion. Many of the states and the Federal Government had made donations of land and subsidies to railroad companies to encourage the construction of these internal improvements. In this State municipalities were authorized to subscribe to the capital stock of such companies for the same purpose: Sharpless v. Philadelphia, 21 Pa. 147. In view of this legislative policy, it seems clear that railroad, canal and turnpike companies were relieved from bonus in order that capital might be attracted to the construction of these public works. To exempt the capital of corporations which did not construct or own railroads, but merely leased them, would not serve this purpose.

Inasmuch as the bonus is the consideration paid upon the contract entered into between the Commonwealth and the company, some weight may properly be given also to the construction placed upon it by the parties at the time it was entered into. It appears from the tabulated statement given above that the Pennsylvania Company paid bonus on May 7, 1870, upon its original capital stock, and on July 18, 1871, and April 1, 1872, upon an increase of $11,900,000. Evidently the company did not consider at that time that it was a "railroad company" within the meaning of the exemption in the Act of 1868.

For the reasons which I have outlined, (1) that a railroad company, within the ordinary and legal acceptation of that term in 1868, did not include a company which merely leased or controlled the railroads which had been constructed and were owned by other corporations; (2) that a company exercising such franchises was not within the purpose for which the exemption was provided; and (3) that the company itself did not at the time consider that it was entitled to the exemption, I am of the opinion that the Pennsylvania Company was not a "railroad company" within the meaning of the exemption made to such companies by section 15 of the Act of May 1, 1868, P. L. 108,

2 D. & C.

but that it received its franchises subject to the bonus charge made by that act.

The further question then arises as to the rate at which bonus was due and payable upon the several increases of capital stock made by the Pennsylvania Company since its incorporation. Since the Act of May 1, 1868, P. L. 108, the following acts have been passed relating to the payment of bonus: April 18, 1874, P. L. 61; April 29, 1874, § 44, P. L. 73; May 22, 1878, P. L. 97; May 7, 1889, P. L. 115; June 15, 1897, P. L. 155; May 3, 1899, P. L. 189, and Feb. 9, 1901, P. L. 3.

The Act of April 18, 1874, P. L. 61, applied only to such corporations as might increase their capital stock under its provisions, and the 44th section of the Act of April 29, 1874, P. L. 73, which was amended by the Acts of May 22, 1878, P. L. 97, and June 15, 1897, P. L. 155, applied only to corporations created under or accepting the provisions of the Act of 1874. Accordingly, the provisions of these several acts do not apply to the Pennsylvania Company: Com. v. Buffalo, Rochester & Pittsburgh Ry. Co., 6 Dauphin Co. Reps. 94 (affirmed 207 Pa. 160). Those acts, however, did not repeal the Act of 1868, and the increases of capital stock made by the company in 1871 and 1881 were subject to the provisions of the original Act of May 1, 1868, P. L. 108.

The Act of May 7, 1889, P. L. 115, was a general act, imposing a bonus at the same rate as the Act of 1868 upon the authorized increase of capital stock made by any corporation theretofore or thereafter incorporated under any general or special act, with certain exceptions, which are substantially the same as those mentioned in the Act of 1868. Inasmuch as no change in the rate of bonus was effected by this act, it is not necessary to consider whether the increase made by the company in 1892 fell within the provisions of this act or the original Act of 1868. The rate of one-quarter of 1 per cent. was the rate applicable.

The Act of May 3, 1899, P. L. 189, changed the rate from one-quarter to one-third of 1 per centum. Its provisions, so far as they are material here, were as follows: ". . . All corporations hereafter created under any general or special law of this Commonwealth . . . shall pay . . . a bonus of one-third of 1 per centum upon the amount of the capital stock which said company is authorized to have, . . . and a like bonus shall be paid by all such companies heretofore incorporated upon any increase of their capital stock hereafter authorized. . . ."

The words "hereafter authorized," as applied to the Pennsylvania Company, refer to the corporate action taken authorizing the increase: Com. v. Independence Trust Co., 233 Pa. 92 (1911). Accordingly, the provisions of this act are applicable to the increases of capital stock made by the Pennsylvania Company by corporate action taken subsequent to May 3, 1899, unless it be that an increase in the rate of bonus would amount to a violation of the constitutional provision forbidding impairment of the obligation of contracts. This constitutional objection was urged in Com. v. Independence Trust Co., 233 Pa. 92 (1911), but the court held that the rate might be changed. The fact that bonus at a certain rate is payable by a corporation at the time of its incorporation, says Mr. Justice Elkin (page 96), "does not mean that a contract was entered into between the Commonwealth and the corporation that the bonus rate should always remain the same, and that the legislature could not, if deemed wise or expedient, increase the rate without violating a contractual relation. We see nothing in the law providing for the payment of a bonus upon capital stock to require us to hold that the rate is in the nature

of a continuing contract, protected by the Constitution and beyond the power of the legislature to disturb. The rate of bonus to be charged for the privilege of incorporating, or for increasing capital stock, is a legislative question, and the legislature has been attempting to cover every phase of it."

The last of the acts cited above, that of Feb. 9, 1901, P. L. 3, provides a general method for the increase of capital stock and indebtedness of corporations, and provides for the payment of bonus at the rate of one-third of 1 per centum upon the *actual* increase of capital stock, as distinguished from the *authorized* increase. The officers of the Pennsylvania Company, in their petition for resettlement, insist that that company is not subject to the provisions of the Act of 1901 because it possessed authority under its charter to make the increases, and actually made them under that authority and not under the Act of 1901. There is much force in this contention. It does not aid the company nor affect the rate applicable to subsequent increases, however, because of the fact that the Act of 1899, above referred to, is applicable, and the rate there fixed is the same. I am of the opinion that the increases made by the company on Oct. 31, 1901, and Oct. 31, 1902, were subject to bonus at the rate of one-third of 1 per centum, as fixed by the Act of 1899.

I, therefore, advise you that the Pennsylvania Company was liable for bonus upon its original capital stock and the subsequent increases thereof at the several rates which are indicated in the settlement made by you and set forth in the schedule hereinbefore given.

From Guy H. Davies, Harrisburg, Pa.