## Ashland v. Schuylkill Railway Company.

*Street railways— Municipalities—Paving—Ordinance—Contract—Relocation of tracks.*

1. Where by ordinance a municipality agrees to allow a street railway company to lay tracks in a street in consideration of paving the roadway between the tracks and for a foot each side thereof, the company is not liable for the cost of a relocation of its tracks by the municipality without its consent.

2. Where, in such case, the company failed to pave its tracks in the original location, it remains liable for such cost in the new location if the municipality decides to move the tracks, but not for the cost of the moving.

Affidavit of defence raising questions of law. C. P. Schuylkill Co., May T., 1922, No. 322.

*L. E. Enterline* and *J. A. Noecker*, for plaintiff; *A. L. Shay*, for defendant.

Koch, J., March 31, 1924.—The question is whether the defendant company is liable to the borough for the cost of shifting the defendant's railway track to a different location in the street and paving on and along the same. On

Ashland v. Schuylkill Railway Company.

Oct. 12, 1891, and on Dec. 12, 1892, the borough, by ordinances, "authorized the Mahanoy City, Shenandoah, Girardville & Ashland Street Railway Company, a corporation incorporated under the laws of the Commonwealth of Pennsylvania, to construct and operate a street railway upon Centre Street, in said borough," and the railway was thereafter constructed and put into operation. In 1905, the said street railway company "sold, conveyed and transferred all its rights, franchises, property, lines of railway, machinery, structures, tools, wires," etc., to the said defendant. The deed is dated April 12, 1905, and is recorded in Deed Book No. 301, page 470.

In its statement the plaintiff, inter alia, says:

"7. That under the said ordinance the defendant company was required, at its own cost and expense, to macadamize in a substantial manner the entire width of its roadbed, being the width between the rails and turnouts, and two feet on each side of the outside of the rails and turnouts.

"8. That it was also the duty of defendant, under said ordinance and under the laws of the Commonwealth of Pennsylvania, to keep and maintain the roadbed on Centre Street, in the said Borough of Ashland, between the rails and two feet on each side thereof, in proper repair.

"9. That the roadway of the defendant company on East Centre Street, in said borough, from a point at the bridge where the Mahanoy Creek crosses East Centre Street eastwardly to a point where the railway of the defendant company leaves said East Centre Street, was never macadamized by the defendant company, as required by the said ordinances.

"10. That in the spring of the year 1921, the said East Centre Street, in the plaintiff borough, including that portion occupied by the defendant company with its railway, was in need of extensive repairs.

"11. That the defendant company was repeatedly notified by the plaintiff borough to repair and maintain that portion of East Centre Street occupied by its railway as required by the ordinances aforesaid and the laws of the Commonwealth of Pennsylvania.

"12. That by ordinance approved May 26, 1921, the plaintiff borough decided to permanently improve said East Centre Street by grading, macadamizing and draining the same from a point at the bridge where the Mahanoy Creek crosses said East Centre Street westwardly, a distance of 755.85.

"13. That at the time of the passage of said ordinance to permanently improve said East Centre Street, defendant company's railway was located on the south side of the said street immediately adjacent to the sidewalk. That for the purpose of permanently improving said street and in the interest of the public welfare, it was necessary that the said track should be relocated and placed in the centre of said street.

"14. That by ordinance approved May 26, 1921, plaintiff borough directed that the tracks of the defendant company be relocated from the south side of said street to the centre of the said street.

"15. That, in pursuance of said ordinance, the defendant company was notified to relocate its tracks on East Centre Street in accordance with the terms of said ordinances."

The defendant neglected and refused to comply with said notice to relocate its tracks, "and also neglected and refused to repair and macadamize that portion of said East Centre Street occupied by its railway." So the "borough began the work of relocating said tracks for the purpose of permanently improving said street." The defendant then obtained a preliminary restraining order, and, upon hearing of the rule to show why it should not be continued or dissolved, an agreement was reached between the plaintiff borough

Ashland *v.* Schuylkill Railway Company.

and the defendant company, which was stated in terms by the chancellor, Aug. 8, 1921, as follows:

"It is agreed by the parties in the case, the borough and the railway company, that the railway company will secure rails as soon as possible and relocate its tracks in the centre of the street according to the plans of the borough offered in evidence here; that the question of the cost of the relocation of the tracks and the cost of the paving and grading of the same will be submitted to the proper tribunal later on in a case stated, and also the cost of replacing the track torn up by the borough. It is also agreed on the part of the borough that if there are any questions as to the location or relocation of the tracks that it will not take the law into its own hands, but the tracks will not be disturbed until the question has been decided by the proper tribunal."

"Mr. Shay: As counsel for the railway company, I will agree that in the case which we are to bring before the court, all questions on either side relating to the costs accruing to either party by reason of the present situation will be taken up for the decision of the court.

"Mr. Noecker: As representing the defendant borough, we agree to the facts as stated by counsel for the plaintiff."

The plaintiff's statement further says:

"19. That the plaintiff borough has made repeated efforts to get the defendant company to agree upon the facts in the case stated as provided for in the agreement referred to, but no judgment has been reached."

The borough now claims $18 for relocating the railway; $72 for grading the centre of East Centre Street for the purpose of relocating the trolley track; $1917.16 for paving the roadbed occupied by the railway as relocated; $553.58 for repairing brick paving torn up by the defendant company to relocate its railway, and, therefore, brings this suit to recover the claims, with interest.

The affidavit of defence challenges the right of the plaintiff to recover the claims that it makes, because the ordinances of the borough granting the right of way "contain no condition subsequent or agreement that the railway company should change the location of its tracks," and because such location can only be changed by mutual consent, and says: *"(d)* The railway company, having refused its consent, cannot be held liable for any of the costs of such change of location."

By giving its consent to the change of the location of the track when the hearing in the equity proceeding was had, the railway company did not thereby agree to pay for the same. The defendant's consent to move the track did not, under the circumstances, imply that the defendant should pay the cost thereof. The track was moved with such consent clearly upon the condition that the liability for the cost thereof was to be determined at law. But when the railway company consented to the relocation of its track, that consent did not relieve the railway company from the obligation to maintain the track, after its relocation, in the same manner that it was to maintain it before its relocation. However, the cost of the relocation cannot be put upon the railway company. The defendant's consent to relocate was without any consideration on its part, and the consent was given wholly in a spirit of amity and not because of any additional advantage that accrued to defendant because of the relocation of the track. The borough could not impose a new condition merely because the consent to the relocation of the track was given by the company at the borough's request. The original ordinances and their acceptance make the contract between the parties here. Under that

contract, reconstructing the street and keeping it in repair according to the contract is all that is required on the part of the defendant. The defendant is not obliged to put down a new and improved pavement on demand of the borough: Norristown v. Norristown Passenger Ry. Co., 148 Pa. 87. When the Norristown Railroad was laid macadam was used, and then the borough decided to pave a certain intersection of two streets with Belgian blocks. Upon notice from the borough, the company neglected to pave the intersection, and the borough did the work and then sought to recover the cost. The court below entered judgment for the defendant and the Supreme Court affirmed it.

A contract between a street railway and a town is not subject to new conditions by the town; it is protected under the Federal Constitution: Point Bridge Co. v. Pittsburgh Rys. Co., 240 Pa. 105. See, also, Hestonville, Mantua & Fairmount Passenger R. R. Co. v. City of Philadelphia, 89 Pa. 210.

Inasmuch as the defendant had not macadamized between, and on the outside of, the rails of its tracks at the place where the track was shifted, the borough could have done the work and recovered the cost thereof from the defendant. Therefore, it seems to us that the borough is entitled to now receive from the defendant what the cost of macadamizing the street between and for one foot on the outside of the rails would have cost, but that it is not entitled to receive the expense of shifting the track nor the whole expense of the paving. On this account, the plaintiff should amend its statement, and the defendant should then answer the same, to the end that a proper issue may be raised in this case.

And now, March 31, 1924, the plaintiff is directed to file a new statement within three weeks, setting forth its claim in accordance with the views expressed in the foregoing opinion, and the defendant is allowed to file an affidavit of defence within fifteen days after such statement has been served on the defendant and filed of record in this case.

From M. M. Burke, Shenandoah, Pa.