Statement of Facts.

JESSE GYGER v. PHILA. ETC. RY. CO. ET AL.

APPEAL BY A. R. MONTGOMERY, ADMR., FROM THE COURT OF COMMON PLEAS NO. 2 OF PHILADELPHIA COUNTY.

Argued January 17, 1890—Decided October 6, 1890.
[To be reported.]

1. When either of the words, railroad or railway, is used in a statutory or constitutional provision, and the context is without indication that a particular kind of road is intended, the provision will be held applicable to every species of road embraced in the general sense of the word used: Hestonville etc. R. Co. v. Philadelphia, 89 Pa. 210.*

2. But, though the words, railroad and railway, are thus synonymous, yet, when either one or the other of them is used in a provision, and it is evident from the context that a particular kind of road is intended, that kind of road only will be held to be the subject-matter of the enactment.

3. Section 4, article XVII. of the constitution, providing that " no railroad, canal or other corporation . . . . . shall consolidate . . . . . with, or lease or purchase the works or franchises of, or in any way control, any other railroad or canal corporation owning . . . . . a parallel or competing line," is not applicable to street-railway companies.

4. The passenger travel over parallel streets of cities is not necessarily a competing travel, and it is quite clear, therefore, that the sense of " competing," which is the essential sense of the prohibition of the section, is not applicable to the travel upon the streets of cities and towns over street-passenger railways.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 106 July Term 1889, Sup. Ct.; court below, No. 332 December Term 1883, C. P. No. 2.

On December 29, 1883, Jesse Gyger filed a bill in equity against the Philadelphia City Passenger Railway Company and the West Philadelphia Passenger Railway Company, setting forth that he was the owner of thirty-six shares of the capital stock of the first named company, and further averring in substance as follows:

2. That the Phila. City Pass. Ry. Co., incorporated by the acts of March 26, 1859, P. L. 243, and March 31, 1859, P. L.

---

* See Millvale Bor. v. Evergreen Ry. Co., 131 Pa. 1.

325, had maintained a street-passenger horse-car railroad in the city of Philadelphia until 1866, a single-track railroad on Chestnut, Front, Walnut and Twenty-second streets, and since 1866, in addition to that route, a double-track railroad on Chestnut to Forty-second street, running cars continuously over the whole of the above described route between Front and Forty-second street, this being regarded as the main or trunk line of the railroad.    That the company also had operated since 1870 a branch road running southwesterly from the main line on Woodland Avenue or Darby road, the cars running continuously on this and on the main line east of Thirty-third street.    That the company had constructed and operated since 1874 a double-track branch railroad, by which their horse cars had made continuous trips on the line east of Thirty-second street, on Thirty-second street, and Lancaster and Belmont Avenues to Elm Avenue.

3. That the West Phila. Pass. Ry. Co., incorporated by the act of May 14, 1857, P. L. (1858) 585, had, since 1858, maintained a double track street-passenger railway, operated by horse cars and at times partly by steam cars, on Market street between Front and Forty-first streets, and on Forty-first street between Market and Haverford street; and also four branches including to the corner of Elm and Belmont Avenues on Forty-first street, Elm Avenue and Fortieth street; and between the corner of Thirty-second and Market streets and the corner of Forty-first and Baring streets, a double-track via Thirty-second, Arch, Thirty-third and Baring streets, on which through cars were run between Forty-first and Haverford streets and Front and Market streets.

4. That between Front and Thirty-second streets, the lines of both the companies were entirely parallel, at the distance between Market and Chestnut streets of 469 feet, and between Market and Walnut street of 1,029 feet.    That the Lancaster Avenue branch of the Phila. City Pass. Ry. Co. and the branches of the West Phila. Pass. Ry. Co., via Baring street, and to Elm Avenue, ran in proximity to each other and to the same destination.

5. That these lines and branches of the two companies were competing roads, and that they were subject to the provisions of article XVII. of the constitution.

6. That the West Phila. Pass. Ry. Co., having no prior au-

Statement of Facts.

thority to use steam power, ran steam-passenger cars for a period exceeding one year, under authority of the act of May 8, 1876, P. L. 147, and a city ordinance passed thereunder of June 2, 1876 ; that the said company in 1880, increased their capital stock under and by virtue of the provisions of the act of April 18, 1874, P. L. 61; that since such use of steam cars and the increase of their capital stock, this company had held its charter subject to the provisions of the present constitution and had accepted all the provisions of article XVII. thereof.

7. That the boards of directors and some of the stockholders of the two companies had entered into a preliminary agreement for the leasing of the Phila. City Pass. Ry. Co., to the West Phila. Pass. Ry. Co., for a long period, and that meetings of the stockholders of each company were about to be held for the purpose of acting on this proposed lease.

8. That the proposed lease was to be for nine hundred and ninety-nine years, of the franchises, tracks, cars and all other property of the Phila. City Pass. Ry. Co., at a yearly rental of $6.50 per share of the capital stock of the former company, for four years, of $7 per share for two years thereafter, and until the end of the term, of $7.50 per share, which payments were to be in full discharge of the rights and interests of the complainant and other stockholders.

9. That these rates of rental were inadequate, and that the lease would deprive the stockholders of their just interest in the company and its earnings, and would have the effect of transferring the present surplus of earnings and property, and also the future net earnings, to the lessees.

10. That such leasing would be illegal ; the Phila. City Pass. Ry. Co. would be exposed to irreparable loss, and its charter imperiled; and that each company was without legal authority to execute the lease.

The prayers of the bill were : 1. That the proposed lease by the Phila. City Pass. Ry. Co. be declared illegal : 2, 3. For an injunction, preliminary until final hearing, then to be made perpetual.

A hearing being had on a motion for a preliminary injunction, upon affidavits filed and presented with the bill, the motion was refused, MITCHELL, J. Thereupon, on January 31, 1884, the plaintiff took an appeal to No. 318 January Term

Statement of Facts.

1884, Sup. Ct. This appeal was argued in the Supreme Court on January 16, 1885, and on February 2, 1885, an opinion was filed, Per Curiam, in which it was held that ample time had intervened to have had a final decree in the court below, where the disputed facts could have been passed upon by a master and the court; that the pendency of the appeal did not suspend the proceedings in the court below: Act of February 14, 1866, P. L. 28; Sheaffer's App., 100 Pa. 379; and the decree of the court below, refusing the preliminary injunction, was affirmed, and the appeal dismissed: See Gyger's App., 15 W. N. 513.

On May 13, 1886, the record was returned with remittitur, when a rule was taken requiring the defendants to plead, answer, or demur. Thereupon on July 7, 1886, the Phila. City Pass. Ry. Co. filed a demurrer, and for cause thereof assigned the following reasons:

1. It is not a railroad corporation within § 4, article XVII., of the constitution of this state, as appears from the facts stated in said bill.

2. If it were a railroad corporation within said section of said article, it does not appear from said bill that the same has ever been accepted by this defendant.

3. If it is a railroad corporation within said section of said article, the lines of the railway companies, defendants herein, as appear by the charters thereof cited in said bill, do not constitute parallel or competing lines, inasmuch as the same are laid and operated on different streets within the limits of a city and have different termini; street mathematical parallelism, nor merely eastern and western endings, not constituting prohibited lines, within the meaning of the said section of said article, as in said bill is erroneously averred.

4. That the said bill contains no matter of equity whereon this court can ground a decree, or give complainant any relief as against the defendant.

Argument having been had, a decree was entered on June 17, 1887, without opinion filed, sustaining the demurrer and dismissing the plaintiff's bill with costs. The plaintiff having died pending the cause, his administrator took this appeal, assigning said decree for error.

*Mr. Henry M. Dechert* and *Mr. Thos. H. Walker* (with them *Mr. Henry T. Dechert* and *Mr. L. B. Walker*), for the appellant:

Arguments.

1. It will be noticed that both the defendant companies were incorporated after the passage of the act of May 3, 1855, P. L. 423, and their charters are therefore subject to the power of the legislature, "to alter, revoke, or annul the same." All corporations falling within the terms of that act, or of the constitutional amendment of 1857, are, so far as the provisions of that statute or that amendment extend, concluded by the action of the convention of 1873: Penna. R. Co. v. Duncan, 111 Pa. 361. Moreover, the West Phila. Pass. Ry. Co. accepted the provisions of the act of May 8, 1876, P. L. 147, relating to the use of motive power upon passenger railways. Under that act, the city councils, on June 2, 1876, passed an ordinance permitting that company to use steam street cars upon its tracks, and the official reports to the secretary of internal affairs show that steam cars were so used by said company. Again; in 1880, the said company increased its capital stock under the provisions of § 5, act of April 18, 1874, P. L. 61, and its return to the secretary of the commonwealth shows that fact. This action estops the company from denying that it has accepted the benefit of the act in question.

2. A corporation has no power to do any act not expressly authorized by law, or necessarily implied: Commonwealth v. Railroad Co., 27 Pa. 339; Packer v. Railroad Co., 19 Pa. 218. And a power to lease its entire property is not an implied power of a corporation like this: Pierce on Railroads, 496; 1 Redf. on Railways, 587; Lauman v. Railroad Co., 30 Pa. 42; Black v. Canal Co., 24 N. J. Eq. 455; Susq. Canal Co. v. Bonham, 9 W. & S. 27; Thomas v. Railroad Co., 11 Otto 71; Middlesex Railroad v. Railroad, 115 Mass. 347. As there is no express power conferred by the charters of these companies, the power to lease must therefore be found, if found at all, in a general law. In the court below, the authority was claimed by virtue of the act of April 23, 1861, P. L. 410, making it lawful for "railroad companies to enter into contracts for the use or lease of any other railroads," etc.; but § 4, article XVII. of the constitution of 1874, provides: "No railroad, canal or other corporation, or the lessees, purchasers, or managers of any railroad or canal corporation, shall . . . . . lease or purchase the works or franchises of, or in any way control, any other railroad or canal corporation owning or having under its control a parallel or competing line," etc.

3. Assuming that these two corporations are subject to the constitution of 1874, the effect of the provison quoted is to add to the act of 1861 the following proviso: "That nothing herein contained shall authorize any railroad company to lease any parallel or competing railroad." It will be observed that the word railroad, is used both in the constitution of 1874 and in the act of 1861, and it is contended that the meaning of the term is the same in both instances. The defendants cannot say they are railroads, to reap the benefits of the act of 1861, and then turn about and say they are not railroads, to avoid the disabilities imposed by the constitution. The word railroad, in the act and in the constitution, will not be presumed to have been used in a different sense: Regina v. Holborn Union, 6 Ad. & E. 68, 69; Sedgwick on Stat. & Const. Law, 2d ed., 225; Mayor v. Davis, 6 W. & S. 280; 1 Bl. Com., 59 n. And if a doubt exist, as to the right of the defendant to enter into the lease, the doubt is decisive of the case, and must throw the decision in favor of the plaintiff: Commonwealth v. Railroad Co., 27 Pa. 351; Commonwealth v. Railway Co., 52 Pa. 518; Packer v. Railroad Co. 19 Pa. 218.

4. But the term railroad, has already received a construction by this court in similar statutes, and the matter is no longer an open question. In Hestonville etc. R. Co. v. Philadelphia, 89 Pa. 210, 219, it is held that the term railroad, includes and embraces that class of railroads laid upon the streets of a city and operated by horses. This decision was followed and approved in Citizens Pass. Ry. Co. v. Pittsburgh, 14 W. N. 268. While the latter decision was upon the particular statute under consideration, the general principles stated to sustain it are equally applicable in the construction of § 4, article XVII., of the constitution. Railroad and railway, are as nearly exactly synonymous as any two words in the language: State v. Brin, 30 Minn. 524. The natural use of the term railroad, must lead to this construction of the constitutional provision. A constitution, moreover, is not to receive a technical construction, like a common-law instrument or a statute: Commonwealth v. Clark, 7 W. & S. 127, 133; Gibbons v. Ogden, 9 Wheat. 188; Manley v. State, 7 Md. 135, 147; Cooley on Const. Lim., *56.

5. Although the debates of a convention to frame a constitution cannot be resorted to as aids in its construction: Taylor

Arguments.

v. Taylor, 10 Minn. 107 ; Eakin v. Raub, 12 S. & R. 330, 352 ;
no more than may the motives, reasons, or opinions expressed
by individual members of the legislature be considered in con-
struing a statute : Aldrige v. Williams, 3 How. 1 ; Bank of
Penna. v. Commonwealth, 19 Pa. 144, yet nothing can be
shown that occurred during the consideration of § 4, article
XVII. of the constitution, which can be construed to indicate
an intention of the convention, or of any members thereof, not
to extend the operation of the section to street-passenger rail-
ways.    Reference is made to the title of the article, " Railroads
and Canals ; " and to the several sections 1, 2, 4, 5, 7, 8, and
9, and the result of the examination is that nearly every
provision in the article has full application to street-passenger
railways.    To intimate that the whole system of city-passenger
railroads was too insignificant for the contemplation of the
people, in adopting their frame of government, is an absurdity.

*Mr. David W. Sellers* and *Mr. John G. Johnson,* for the ap-
pellees.

The defendants executed a lease of the one road to the other
in 1883.    Since then the cars have been running in accord-
ance with the lease.    That lease was executed pursuant to the
act of April 23, 1861, P. L. 410.    In Phil. etc. R. Co. v. Rail-
road Co., 53 Pa. 60, this act was interpreted to authorize a
lease where there " is such a union of tracks as to admit the
passage of cars from one road to the other, or such intersection
of roads as to admit the convenient interchange of passengers
at the point of intersection ; " with a limitation, in Wood v.
Railroad Co., 8 Phila. 94, that the act applies only to con-
structed roads.    As street passenger railways were included in
this legislation : Hestonville etc. R. Co. v. Philadelphia, 89 Pa.
211, no question can arise upon the validity of the lease, unless
the constitution forbids it.

1. Street-passenger railway companies are not within the pro-
visions of § 4, article XVII. of the constitution.    This section
obviously refers to the railroad and canal companies enume-
rated in §§ 1, 3 and 7, of that article.    At the time the con-
stitution was framed, there were railroads which had cars
with motive power and which transported persons and goods.
These sections evidently apply to such railroads.    But street-

passenger railways are specially referred to in § 9 : " No street-passenger railway shall be constructed within the limits of any city, borough or township, without the consent of its local authorities;" following the distinction taken in § 12, act of April 4, 1868, P. L. 65, the general railroad act: " This act shall not be so construed as to authorize the formation of street-passenger railway companies to construct passenger railways, under or by virtue of its provisions, in any city or borough," etc.

2. A lease by one passenger-railway company to another, under the act of 1861, was sustained in Shipley v. Railroad Co., 13 Phila. 129. But, though a power to lease was conferred by that act, which refers to railroad companies, the plaintiff contends we are inconsistent in denying that we are within the restriction of § 4, article XVII., which prohibits leases by competing or parallel railroads. Nothing is better settled, however, than that a word may be held to mean one thing in one act of assembly, or instrument, and something else in another. " Words vary in their import, according to the subject to which they are applied: " Potter's Dwarris, 230. In a technical sense, a street railway is not a railroad : Louisville etc. R. Co. v. Louisville Ry. Co., 2 Duv. (Ky.) 175 ; Johnson v. Railway Co., 10 Bush. (Ky.) 231 ; Matson v. Brand, 3 App. C. (H. L.) 1082. While we concede that even in Pennsylvania the term railroad, is sometimes used to describe a street railway, and the term railway, is occasionally used as a synonym for railroad, we recall no instance of a legislative use of the word railroad, as a generic term including both classes.

3. Our contention is, not that a railway may not be included within the designation of a railroad, but that it is not so included in the absence of some indicia, and that it certainly is not when the indicia of the context are all opposed to such conclusion. In Hestonville etc. R. Co. v. Philadelphia, 89 Pa. 210, the court did not decide that the term railroad, necessarily included a street railway. On the contrary, the opinion delivered shows that the fact was recognized, that "in the statutes one class was generally styled railroads, and the other more frequently, but not always, railways," and that the interpretation given to the term railroad, in the act of 1861, was

the result of an examination of other statutes, and the absence of any indication in the statute itself, on the part of the legislature, to use the word in its restricted sense. As suggested, however, the construction put upon the word railroad, in one act of assembly, by reference to its meaning as used in another, does not govern where we are seeking its meaning when used by the constitutional convention.

4. Although the title of article XVII. of the constitution is confined to railroads and canals, there are undoubtedly some provisions in it applicable to street railways and transportation companies generally. When, however, street railways and transportation companies are meant to be included, they are specially referred to, and the convention was not satisfied, where this was the intention, to use the word railroad generally. The title to the article shows the 'general intent and subject matter of it. Finding as we do, that where railways were meant to be included they were referred to by that designation, it is difficult to resist the conclusion that where the word railroad was used by itself, it was used in its ordinary and limited sense. We are not obliged to rest on this inference alone, however, because we find in the context of each section that which shows clearly that the thought was limited to railroads strictly, as popularly understood.

OPINION, MR. JUSTICE GREEN:

It is undoubtedly true, as we have several times decided, that the words " railroad " and " railway " are synonymous, and in all ordinary circumstances they are to be treated as without distinction of meaning. When either one or the other of these words is used in a statute, and the context requires that a particular kind of road is intended, that kind of a road will be held to be the subject of the statutory provision; but if the context contains no such indication, and either of the words is used in describing the subject-matter, the statute will be held applicable to every species of road which is embraced within the general sense of the word used. All of this was decided in the case of Hestonville etc. R. Co. v. Philadelphia, 89 Pa. 210, where we held that the act of May 16, 1861, P. L. 702, entitled " An act relating to railroad companies," and authorizing the consolidation and merger of railroad companies, em-

braced within its meaning street passenger railroad companies
as well as steam railroad companies. The reasoning of the
opinion was principally upon the proposition that the expres-
sions "railroad" and "railway" were in fact synonymous
terms, and that there was nothing in the context of the act in-
consistent with the application of the word "railroad" to a
street passenger road. It was conclusively shown in the opin-
ion that the legislature was in the constant habit of using both
words indiscriminately as expressing the same thing. No nec-
essary inference is therefore to be drawn from the mere use
of either word that a limited class of roads was intended. It
follows that we must search the context of the seventeenth ar-
ticle of the constitution in order to ascertain in what sense the
word "railroad" was used in the fourth section. It is the con-
tention of the appellant that the prohibition of the section
against the amalgamation of competing roads applies to street
passenger railroad companies as well as to those of steam roads,
and, if this contention is unsound, the appellant has no case.

The title of the article is "Railroads and Canals." This is,
of course, sufficiently comprehensive to embrace all classes of
railroads and railways; and we accordingly find that a number
of the sections are applied to steam railroad companies exclu-
sively, and at least one section, the ninth, is applied exclu-
sively to street passenger railway companies. The first section
provides that all railroads and canals shall be public highways;
that any association organized for the purpose shall have the
right to construct a railroad between any points within the
state, and to connect at the state line with railroads of other
states; and that every railroad company shall have the right
to intersect, connect with, or cross any other railroad, and shall
receive and transport, each, the other's passengers, tonnage,
and cars without delay. It must be conceded at once that this
section cannot possibly apply to street passenger railway com-
panies, as all its provisions are utterly hostile to such a thought.
Section third provides that all individuals, associations, and
corporations shall have equal right to have persons and prop-
erty transported over railroads and canals, and no unreasonable
discrimination shall be made in charges for, or in facilities for
transportation of freight or passengers within this state, or
crossing from, or going to, any other state. It is equally cer-

tain that this section, also, cannot embrace passenger railway companies, since such companies are, as a rule, though not always, without authority to carry freight, and do not extend to state lines. The fifth section is also inapplicable to street railroad companies, because it imposes disabilities upon carrying companies against engaging in mining or manufacturing articles for transportation over their roads; and, as street passenger companies do not transport articles of manufacture over their roads, as a regular business, they are not included within the manifest meaning of the section. The same remarks apply to the sixth section, which imposes the same disabilities upon officers as are imposed by the fifth section upon the companies themselves. The seventh section plainly relates to the transportation of merchandise or freights, and hence is equally inapplicable to street passenger companies. The eighth section prohibits any railroad, railway, or other transportation company, from granting free passes to any persons but officers and employees. This section relates to the carriage of passengers only, and it plainly includes street passenger companies as well as all others, because it expressly mentions "railroad" and "railway" companies. But, because it uses both terms, "railroad" and "railway," a most convincing argument arises that the convention considered it necessary to use both in order to embrace both, and hence it must be considered they did not intend to include both in the other sections where only one is used. The force of this argument is greatly strengthened when we consider the ninth section, which provides that "no street passenger railway shall be constructed within the limits of any city, borough, or township, without the consent of its local authorities." It is perfectly clear that the convention did not regard the word "railroad" as synonymous with "railway" or "street passenger railway," when this section of the article was framed. It is equally conclusive that they were perfectly conscious of the difference between the two classes of roads, and that when they intended to make provision respecting "street passenger railways," they considered it necessary to use this kind of phraseology in order to designate them. Can the courts do any less? Can we attribute to them any other meaning than the one they have, by well-chosen words, clearly expressed, when they desired to make provision for this partic-

ular class of roads ?   Are we at liberty to infer, in considering
the fourth section, where they made a provision as to railroad
and canal companies, that they intended by that mode of descrip-
tion to designate " street passenger railway companies " as
well?   We think not.   Having a full knowledge of the precise
manner in which they considered it necessary to express them-
selves when they desired to provide for " street passenger rail-
way companies," we find that in the fourth section they entirely
abstain from that mode of expression, or from any similar
phraseology.   We must conclude that the reason for such ab-
stention was that they did not intend to include them in the
prohibition of the fourth section.

    This is the obvious and natural conclusion to reach, and we
know of no reason why we should not regard it and be governed
by it.   If we consider the subject-matter of the fourth section,
we are strengthened in the correctness of this conclusion.   It
provides that " no railroad, canal, or other transportation com-
pany, or the lessees, purchasers, or managers of any railroad or
canal corporation, shall consolidate the stock, property, or
franchises of such corporation with, or lease or purchase the
works or franchises of, or in any way control, any other rail-
road or canal corporation owning, or having under its control,
a parallel or competing line."   The subjects of the prohibition
are railroad and canal companies.   They are classed together
as the subjects of a prohibition common to both.   Railroads
and canals are means of transportation which relate to and cover
the territory of the state.   In their ordinary understanding
by the people they are regarded as methods of carriage of
freights and passengers—most largely of freights—between dis-
tant points within the state, and to the borders of the state, so
as to connect with other similar systems of transportation with-
out the state to still more remote points.   It would be a most
strained and unreasonable conclusion, to hold that the con-
stitutional convention, when it plainly, and for wise reasons,
prohibited the amalgamation of railroads and canals of this char-
acter, and parallel or competing with each other, had any pos-
sible reference to the mere passenger travel over the streets of
cities and towns.   There is nothing in the section or in the ar-
ticle XVII. itself indicating that the convention had any such
thought or any such purpose.   There is no argument in sup-

Opinion of the Court.

port of such a theory except that which is based upon the generality of the word "railroad;" but it has been already seen that there is no necessary, essential force in that argument considered by itself alone; that it is always subject to the effect of the context when considered in connection, and that upon such a consideration in this particular case it falls to the ground.

We think, also, that it is quite clear that the sense of "competing," which is the essential sense of the prohibition, is not applicable to the travel upon the streets of cities and towns over passenger railways. The competition of traffic between distant points, by rival roads and canals, tends to promote cheap transportation and thereby tends to the public good. But, if this is suppressed by the absorption of one of the competing lines by the other, the wholesome competition ceases and higher rates soon result. This is the evil which was sought to be prevented by the fourth section of the seventeenth article. It will be seen at once that it is inapplicable to the travel upon streets of cities and towns on passenger railways. The travel over parallel streets is not necessarily a competing travel. Each street has travel of its own which is conducted upon its own railway. That travel may be almost entirely conducted without competition with the travel upon another though parallel street, nor do railways upon parallel streets have the same termini. Many of them, though running upon parallel streets for a considerable distance, diverge altogether from such a course at their extremities. Two roads would be competing if laid upon the same street, and running in the same direction, but that is not this case, and probably is not the case anywhere in the state. Moreover, no freight is carried upon passenger railways, and it is the carriage of freight that was probably of principal importance in the design of the fourth section. All the analogies which would liken the traffic upon street railways with that upon the railroads and canals of the state are wanting, and hence we are without authority to impose upon the language of the fourth section a meaning which does not reside in its words, and which does not result by any rational implication. The language used in the fourth section in designating the objects of its provisions is precisely the same as is used in all the other sections for the same purpose, and when passenger

railways are intended to be indicated a different phraseology is employed. We find nothing in the fourth section indicating that the word "railroad" was there used in any other sense than that in which it was manifestly used in the other sections, and we are therefore not at liberty to give it any other meaning than is apparent in those sections. We think the court below was right in dismissing the plaintiff's bill.

The decree of the court below is affirmed, and the bill of the plaintiff is dismissed at the cost of the appellant.

Mr. Justice STERRETT dissented.