# BALTIMORE CITY COURT

Filed January 7, 1896.

## THE MAYOR AND CITY COUNCIL OF BALTIMORE

### VS.

## THE BALTIMORE, CATONSVILLE & ELLICOTT'S MILLS PASSENGER RAILROAD COMPANY.

*Mr. William S. Bryan, Jr.,* for plaintiff.

*Messrs. F. K. Carey* and *E. J. D. Cross* for defendant company, and *Messrs. Fielder C. Slingluff* and *John P. Poe* for Traction Company.

PHELPS, J.—

The defendant company operates a local passenger railway, running for a part of its length (about two miles) through the annexed district, or within the present territorial limits of the city as extended, and for the rest of its length (about three and one-half

miles) westwardly beyond those limits, and for the whole of its length on its own right of way, acquired and maintained at its own expense. This right of way it has purchased from the turnpike company upon whose roadbed its tracks are laid, under legislative authority. No street franchise or concession of any kind whatever has been conferred upon it by the city. Its tracks are not laid upon, nor does it use, nor has it received any municipal privilege upon any city street or streets acquired from the city by grant, dedication or condemnation, or in any other way, and maintained at public expense.

The question is whether such an enterprise properly answers to the description of a "street railway," within the intendment of the laws imposing the park tax of nine per cent. upon gross receipts from all street railway lines within the present city limits?

Maryland Code P. L. L., Article IV, Secs. 768, 679, 769A, 769B, 769C.

Sections 768 and 769 are codified under the generic sub-title "Railroads," specific sub-title, "Street Railway Fares," and refer to passenger horse railway companies, the only kind of street railways then operating. The other sections are added by the Act of 1894, Ch. 550, and use the more comprehensive term "Street Railways" and "Street Railway Lines," to include of course all motive powers. The railway of the defendant was until recently a horse road, and is now electrequipped, but in the view herein taken the question of the particular motive power is not material.

As to the meaning of the modern term "street railway," definitions of recent text writers appear upon comparison to amount to this, that the primary meaning of a street railway is a local passenger railway laid on streets, and that its secondary or derivative meaning is a railway resembling a street railway not laid on streets. Booth on Street Railways, Sec. 1; Elliott on Roads and Streets, 557; 23 Am. & E. Enc'y. 941; Johnson's Univ. Cyclop. (1895).

None of the authorities cited give that precise form of statement, which is the result extracted from them all. None of the modern dictionaries, American or English, which attempt to define the term, distinctly recognize the secondary meaning at all. Century, Standard and Encyclopedic Dicts.; 2 Bouv. Law Dict.

A more exact classification, to include all possible cases in point of locality to which the term street railway might be applied, including that claimed by the plaintiff, would be as follows:

1. Street railways proper.
2. Street and suburban railways.
3. Quasi street railways.

1. A strong disposition is manifested in some jurisdictions to confine the term of the first sense above given, or to railways constructed wholly on streets. Thus it has been held that a street railway is a "railroad the rails of which are laid to conform to the grade and surface of a street."

Williams vs. City Electric, 41 Fed. 556.

2 Beach, Pri. Corp., Sec. 403.

It has been described as a railway "which subserves street purposes, reaps the benefit of street easements, and occupies and modifies the street surface."

Matter of N. Y. D. R. Co., 107 N. Y. 52.

It has also been held to be "dedicated to the more limited use of the local public for the mere transient transportation of persons only, and within the limits of a city."

Louisville R. Co. vs. City R. Co., 2 Duv. 211, 178.

It has also been referred to as intended for "travel upon streets of cities and towns."

Gyger vs. R. Co., 136 Pa. 96, 106.

In the same sense the term has been used (incidentally, however, rather than restrictively) in the following cases:

Hodges vs. R. Co., 58 Md. 603, 618.

Koch vs. N. Av. R. Co., 75 Md. 222, 230.

N. B. R. Co. vs. Baltimore, 75 Md. 247, 250.

N. B. R. Co. vs. N. A. R. Co., 75 Md. 233.

L. R. Co. vs. Baltimore, 77 Md. 352, 385.

State vs. Latrobe, 81 Md. 222, 240.

It should be noted, as a well known matter of fact, that several of the railways mentioned in the above cited Maryland cases were really street and suburban railways, although their operations upon streets were the only

subjects of controversy, and so far as the purpose of those cases were considered they were strictly street railways.

2. Instances may readily be found of a more liberal use of the term as applied to street and suburban railways, either street railways proper extending over adjacent private easements or suburban railways extending into the city over its streets. M. & C. C. vs. Turnpike Co., 80 Md. 535, 541.

The Act of 1860, Ch. 259, referred to in the case last cited authorizes the "passenger iron railway" there provided for upon the turnpike to be extended over streets of Baltimore City, and such extension had actually been made. See also 1894, Ch. 162, Sec. 2: Thompson-Houston Co. vs. Simon, 20 Oreg. 61.

3. So far as I am advised, there is no reported case of the use of the term in the distinct sense of a quasi street railway, or a railway resembling a street railway, laid wholly upon private easement. In a very recent decision, where this particular corporation was in controversy, the term street railway was not applied to it, but seems in more than one place to have been carefully avoided. Turnpike vs. R. Co., 81 Md. 247, 254, 257.

Notwithstanding the absence of specific authority and the silence of the dictionaries, it may be assumed that if such use of the term in a statute were positively and clearly indicated by the context and subject matter it would be so accepted. From what has gone before, however, it sufficiently appears that such questionable and exceptional use will not at least be presumed "a priori."

As lately said by the Court of Appeals in another connection, the question we have to deal with here is "not merely a dictionary question," and the acceptation of the terms used in the Code, will "depend somewhat on the subject-matter in connection with which it is used." M. & C. C. vs. Turnpike Co., 80 Md. 542. In this respect the phrase resembles the more general term "railroad," whose "meaning, wherever found, depends entirely upon the connection in which it is used." 19 A. & Ency., 777.

As to the legal conception of a "street" there is no place here for an abstract discussion. As will be seen further on, the line of distinction between a street and a turnpike in the particular locality has been clearly defined in the Local Code.

The meaning of the term "street railway," as used in Article IV of the Public Local Laws, has, therefore, to be considered in these two connections; first, as relates to the subject-matter of the Park tax; and next, as relates to the subject-matter of the locality in question, the territory annexed to Baltimore City by the Act of 1888, Ch. 98.

I. Looking at the real intent of the legislature as gathered from the language of these enactments, not suppressing a specific sub-title as above, because perfectly consistent not only with the purview, but also with the entire system of antecedent but now superseded legislation, both municipal and State, "in pari materia," and indeed voicing, with apt and accurate precision, the spirit of the system; considering especially the peculiar nature and character of the park tax itself, and its settled judicial interpretation, as a tax imposed for the privilege of using city streets for railway purposes (Baltimore Union Passenger R. Co. vs. M. & C. C., 71 Md. 413, 414). Considering the amount of the tax, nine per cent., as compared with the tax of one-half of one per cent. upon the gross receipts of steam railroads (Md. Code, Art. 31, Sec. 146), whereas in the essential characteristic of rights of way acquired by purchase both classes of railway stand alike; and considering also, in connection therewith, all the physical and financial surrounding circumstances, plainly showing the marked injustice that the contrary construction would attribute to the legislature, in striking and wholly unexplained inconsistency with the liberal spirit manifested with respect to taxation generally in the annexed districts by the contemporaneous annexation act of 1888 Ch. 98, Sec. 19; I am of the opinion that the question propounded must be answered in the negative. In the construction of statutes imposing a peculiar tax characterized by its nature, amount, origin and judicial exposition as a tax upon the privilege of reaping the benefit of street easements, the words "street

railways" will not be extended to railway lines not laid on streets but wholly upon proprietary easements.

II. The proprietary right of way in this case, as before stated, is over a turnpike road. Now it is to be observed, that while streets in the annexed district which had been condemned as streets under the laws relating to streets in Baltimore County are constituted streets of Baltimore City, no such conversion has been made of turnpike roads, whose right to collect tolls and maintain toll-gates within the annexed district is expressly reserved, and it is not until voluntary cession to the city that such roads become "subject to the same regulations as unpaved public streets." P. L. L., Art. IV, Secs. 4, 6, 818, M. & C. C. vs. Turnpike Co., 80 Md. 535, 544. It will thus be perceived that with respect to the locality the subject matter in question, the line of distinction between a street and a turnpike road has been too sharply drawn by public laws to admit of confusion or misunderstanding. In the purview of the public local code, a turnpike road within the annexed district is distinctly and pointedly not a street, and hence a railway laid entirely upon such turnpike road does not, in the dialect of the public local code, answer to the description of a street railway. (See also Lake Roland R. Co. vs. Webster, 31 Md. 529, 536.)

And the difference, as already seen, is not a mere nominal, but a substantial difference, and a substantial difference with a reference especially to the tax in question, its rationale, its amount, the concession acquired for it, the capacity to earn it and the adjudicated principle of its imposition.

In both connections, therefore, the term "street railways" will be accepted in its primary, rather than in its derivative sense, in its original and natural, rather than its exceptional use, as meaning "street railways," and not quasi street railways.

Although the conclusion thus reached that the city is upon the whole not entitled to recover, seems sufficiently obvious, because based upon the only construction which maintains the spirit, purpose and reason of the law, while not departing from the letter, yet there can be as little doubt that in view of the public and continuing importance of the question to the city on the one hand, and to a powerful group of corporations on the other, the learned City Solicitor was fully warranted in pressing the claim to the test of judicial investigaiton. It must be admitted that enough can be discovered in the apparent tangle in which some of the past legislation on this subject is found when chronologically traced, and in the broad meaning sometimes given, and properly given, to the term "street railway," in other connections, to make his contention a fairly debatable one, and it is but justice to that able official, who has had to contend single-handed against a host of formidable champions, although not at all necessary to say, that in the determined effort to maintain his position he has exhausted the resources of ingenuity, learning and vigor.

In the view taken, it becomes of course unnecessary to consider those questions ably argued at bar which would otherwise be raised, either in this case or in other suits to which the attention of the Court has been directed as pending but not submitted for adjudication.