J. H. Cheetham and Henry Landis, M. D., v. Henry C. McCormick, Attorney General, Appellant. (No. 1.)

J. H. Cheetham and Henry Landis, M. D., v. Henry C. McCormick, Attorney General, Appellant. (No. 2.)

*Street railways—Constitutional law—Article 16, section 7 of the constitution.*

Street railway companies are within the operation of article 16, section 7 of the constitution of 1874, which provides that " no corporation shall issue stock or bonds, except for money, labor done or money or property actually received; and all fictitious increase of stock or indebtedness shall be void."

*Street railways—Railroads—Act of May* 7, 1887.

Street railway companies are "railroad corporations" within the meaning of the act of May 7, 1887, P. L. 94, entitled " An act to enforce against railroad corporations the provisions of section seven, of article sixteen of the constitution."

*Street railways—Attorney general—Mandamus—Act of May* 7, 1887.

" Two reputable citizens resident in the region traversed by the line " of a street railway company have a standing to petition the court for a mandamus to compel the attorney general to institute proceedings against a street railway company to enforce the provisions of the act of May 7, 1887 ; but before that officer will be subject to a writ of mandamus to compel him to proceed under the act of May 7, 1887, he has a right to know the strength of the case he is asked to present in the name of the commonwealth ; and the parties asking him to proceed must present for his consideration facts showing a prima facie case.

Argued June 2, 1896.    Appeals, Nos. 17 and 19, May T., 1896, by defendant, from judgments of C. P. Dauphin Co., Commonwealth Docket, 1895, Nos. 25 and 26, granting a peremptory mandamus.    Before STERRETT, C. J., GREEN, WILLIAMS, MC-COLLUM, MITCHELL, DEAN and FELL, JJ.    Reversed.

Petition for mandamus.    Before SIMONTON, P. J.

From the record it appeared that the Reading Traction Company was incorporated under the act approved March 22, 1887, entitled " An act to provide for the incorporation and regulation of motor power companies for operating passenger railways by electricity, cable or other means."    The Reading & Womelsdorf Electric Railway Company was incorporated under the provisions of the act of assembly, approved May 14, 1889, entitled " An act to provide for the incorporation and government of street railway companies in this commonwealth."

In July, 1895, an application was made to the attorney general by J. H. Cheetham and Henry Landis, M. D., " two reputable citizens, resident in the region traversed by the line of the railroad " for process against the two companies above named upon the ground that they had issued stock contrary to the provisions of the act of May 7, 1887, entitled " An act to enforce against railroad corporations the provisions of section seven of article sixteen of the constitution."    After full hearing the attorney general refused to proceed against said companies upon the ground : First, that traction companies and

street passenger railway companies were not within the purview of the act of 1887; and, second, if they were, that no such complaint had been made before the attorney general as would warrant him in commencing proceedings "at law or in equity" as provided by section four of said act of 1887. A rehearing was granted on the application of counsel for Messrs. Cheetham and Landis, and their application was again refused. The complainants then filed their petition in the court of common pleas of Dauphin county, praying for a mandamus against the attorney general, commanding him to commence proceedings "at law or in equity," as provided by the said act of 1887. The court below, in an opinion by SIMONTON, P. J., awarded a peremptory mandamus, holding that motor power companies and street passenger railway companies were within the provisions of the act of 1887; that the attorney general was absolutely without any discretion when complaint was made by "two reputable citizens, resident in the region traversed by the line of the railroad," and, further, that it was not necessary that the "two reputable citizens" should be interested either as stockholders or creditors, but that all that was necessary was that they should swear that they resided "in the region traversed by the line of the railroad." From these judgments appeals were taken by the attorney general.

*Error assigned* was judgment awarding a peremptory writ of mandamus.

*Henry C. McCormick,* attorney general, with him *John P. Elkin,* deputy attorney general, for appellant.—Though the words "railroad" and "railway" are synonymous, yet where either one or the other is used in a provision, and it is evident from the context that a particular kind of road is intended, that kind of road only will be held to be the subject-matter of the enactment: Gyger v. R. R., 136 Pa. 96; Hestonville etc. R. R. v. Phila., 89 Pa. 210; Borough of Millvale v. Evergreen Ry., 131 Pa. 1.

It is clear, under the act of 1836, relating to the duties of the attorney general, that he is clothed with discretionary power as to the institution of suits in the name of the commonwealth, and it is equally true that, unless the act of 1887 changes the

well established rule, the discretionary power of that officer can not be supervised or controlled by the courts : High on Extraordinary Legal Remedies, sec. 45 ; Spelling on Extraordinary Relief, sec. 1, 304.

The petitioners are not persons beneficially interested : Com. v. Allegheny Bridge Co., 20 Pa. 185 ; Murphy v. Farmers Bank, 20 Pa. 415 ; Com. v. Phila. Ger. & Nor. Ry., 20 Pa. 518 ; Com. v. Burrell, 7 Pa. 34 ; Com. App., 85 Pa. 433.

*Cyrus G. Derr*, for appellees.—The title of the act of May 7, 1887, is "An act to enforce against railroad corporations the provisions of section seven of article sixteen of the constitution." The words "railroad" and "railway" are synonymous, and when a statute relates to "railroad companies" or "railway companies," and there is nothing in the title or context which limits its operation to a particular kind of company, it will be held to embrace all kinds of railroad and railway companies, and there being nothing in the title or body of the act of May 7, 1887, indicative of a contrary intent, it must be taken to apply to passenger as well as to steam railway companies : Hestonville etc. R. R. v. Phila., 89 Pa. 219 ; Mace v. Cammel, Lofft, 782 ; Colehan v. Cooks, Willes, 395 ; Holbrook v. Holbrook, 1 Pickering, 250. The Reading Traction Company here in question must be regarded as a railroad corporation : Act of March 22, 1887, P. L. 8 ; Rafferty v. Central Traction Co., 147 Pa. 587.

The purpose of section 4 of the act of May 7, 1887, was to insure proceedings against railway corporations whenever two reputable citizens, as described therein, should file with the attorney general a written complaint under oath, and the language "upon complaint . . . . of any two reputable citizens . . . . it shall be the duty of the attorney general at once to institute proper proceedings," leaves that officer no discretion, but is a legislative assignment of duty which he is not at liberty to disregard : Com. v. Burrell, 7 Pa. 34 ; Com. v. McHale, 97 Pa. 406.

The interest requisite to entitle the appellees to a writ of mandamus under the provisions of the act entitled "An act relating to mandamus," approved June 8, 1893, P. L. 345, is a beneficial interest in the results sought to be obtained, and the appellees in this case have such beneficial interest : Heffner v.

Com., 28 Pa. 112; Union Pacific R. R. v. Hall, 1 Otto, (U. S.), 343; Mechem's Public Offices & Officers, sec. 948.

The complaints filed by the appellees with the attorney general against the companies in question were precisely in accordance with the provisions of the act of 1887 : Blatch v. Archer, Cowper, 63; Fowler v. Sargeant, 1 Grant's Cases, 355; Frick v. Barbour, 64 Pa. 120.

OPINION BY MR. JUSTICE WILLIAMS, October 5, 1896 :

The constitution provides, art. 16, sec. 7, that "No corporation shall issue stock or bonds except for money, labor done, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void." There is no exemption from the operation of this prohibition, and it is perfectly obvious therefore that street railway corporations are within it. They are exposed to the mischief to be guarded against. They are within the remedy proposed by the people in the fundamental law. A few years' experience under the new constitutional provision appears to have satisfied the legislature that the frauds forbidden by art. 16, sec. 7, were most frequently perpetrated by railway corporations. Accordingly, in 1887, a law was passed having for its title " An act to enforce sec. 7 of art. 16 of the constitution against railroad corporations." Not only does the title indicate its purpose but its preamble also recites the constitutional prohibition, its violation by means of various devices by railroad corporations, and the intent to provide a more effective means for the protection of the public against the evil. The several sections of the act provide that "no railway corporation of this commonwealth, its directors or officers " shall issue, or authorize the issue, of any stock of the corporation " for less than its par value," which par value in money shall be actually paid into the treasury of such corporation before the stock issues.

They further provide that no bond shall be issued for less than its fair market value; and that all stock and bonds issued in violation of the provisions "shall be void." The act then provides a form of procedure by means of which the several provisions of the act may be enforced, and the stock or bonds, or both, issued in violation of the act may be adjudged to be void, and the officer or officers issuing such stock or bonds pun-

ished as they most richly deserve to be.    This was a proceeding under the act of 1887 to have certain shares of stock and certain bonds alleged to have been issued in violation of its terms, and of the provision of the constitution, declared to be void; and to restrain the officers from the delivery of such of the shares and bonds as might still be within their control.    The application was first made to the attorney general, and was refused by him on the theory that street railway corporations were not "railroad corporations" within the meaning of the act of 1887.    The application for a writ of mandamus was then made; and to that an additional defense is interposed on the ground that the refusal by him to proceed against the corporations alleged to have violated the act of 1887 was the exercise of an official discretion by the attorney general and was not reviewable in the common pleas.    The learned judge of the court below ruled in favor of the petitioners on both points.    The attorney general appealed for the purpose, as we have no doubt, of getting an authoritative construction of the act of 1887, by which the position of street railroads under its provisions, and the limits of his own official duty might be definitely settled.

We have therefore two questions presented on this record. First, are street railroads within the purview of the act of 1887? Second, what, if any, discretion does the 4th section of the act leave to the attorney general in regard to its enforcement? The first of these questions does not require an elaborate consideration.    The constitutional provision includes all corporations, organized for business purposes, in its prohibition.    The act of 1887 selects from the mass of corporations a single class, viz: "railroad corporations," and provides for them.    These words include all railroad corporations unless their comprehensive character is restricted by words of limitation found in the title, or in the body of the act: Rafferty v. Traction Co., 147 Pa. 579; Millvale v. Railroad Co., 131 Pa. 1.    There are no such restrictive words in the title.    There are no words in the body of the act that were intended, or that can fairly be used, to differentiate steam railroads from all other railroads as the corporations to be affected by its provisions; or that were intended, or can be fairly used, to exempt street railroad corporations from its operation.    There are some expressions made use of in the 2d section, and some in the 4th, that are more usually

used with reference to steam railroads; some that are equally applicable to any sort of a railroad corporation; but none that may be said to be peculiar to any one class of railroads.

There is therefore nothing in the words employed in the body of the act that requires us to restrict the generality of its title, or that would justify us in so doing. Street railways are clearly within the constitutional prohibition. They are within the mischief recited in the preamble to the act of 1887. They are within the remedy which the act provides. The ruling of the learned judge of the court below on this point is affirmed. This question being settled the right of the petitioners to be heard follows. They are clearly within the class of persons authorized to proceed by section 4 of the act. Having a right to be heard on the question of the validity of the stocks or bonds issued, when that right is denied they are persons beneficially interested in the subject-matter in regard to which the writ of mandamus is prayed for.

The second question still remains to be considered. The learned judge of the common pleas denied the possession of any discretionary power by the attorney general so far as proceedings under the act of 1887 are concerned, and held that "on the facts shown by the petition it became the duty of the attorney general to proceed against the corporations named." On the other hand it is contended by the learned attorney general that the complaint provided for in the 4th section of the act is addressed to him as the law officer of the commonwealth, is to be heard and disposed of by him, and that his decision not to proceed in the courts upon the facts so presented is a final disposition of the complaint and conclusive upon the petitioners.

We cannot adopt either of the views so presented without considerable qualification. The attorney general is the law officer of the commonwealth and represents her in all her litigation. In proceeding under the act of 1887 he must use the name of the commonwealth, and the costs, if he is unsuccessful must fall on the commonwealth. When a complaint reaches him an inquiry into the facts may satisfy him that the complainants have been misled, or that they really have no information on the subject, but are acting from malicious motives or for stock jobbing purposes. He may see very clearly that to proceed under the act would be unwise, would invite certain defeat, and fasten

a bill of costs unnecessarily on the commonwealth.    Under such circumstances it is the duty of the attorney general, under his official oath, to say to the complainants "you have no case;" and it is his right to decline to ask for the complainants relief he is satisfied they have no right to.    If then the complainants have any proofs to submit in support of their complaint they should present them.    If they can show a prima facie case in support of the facts alleged they have met the only objection the attorney general can interpose and it will then become his duty to proceed.    The question of public benefit, and that of public policy, have been settled by the action of the legislature. Have the complainants a prima facie case is the question which the legislature has not conclusively settled, and which is therefore open for consideration by him.    If after they have presented for his consideration facts that justify their complaint he still refuses to proceed, it may well be urged that he is not exercising the sound discretion of a public officer, but the arbitrary will of one who refuses to discharge a public duty because he has the physical power to do so.

Before the attorney general is subject to a writ of mandamus to compel him to proceed under the act of 1887, he has a right to know the strength of the case he is asked to present in the name of the commonwealth ;. and unless the petitioner shows a prima facie case under the statute when a mandamus is asked for, it should be presumed that the refusal of the attorney general rested on his conclusion from all the facts before him that the complaint could not be sustained by proof.    We reverse the decree in this case for this reason only.    The record is remitted, and the petitioners may present the facts to the attorney general by the affidavits of any competent witnesses, and if they are able to show, prima facie, a case which would justify the proceedings they invoke, we have no doubt the respondent will give prompt and vigorous attention to their complaint.    The investigation made by him will be ex parte, and carried so far only as to show that a prima facie case in support of the complaint exists.