## Blair County Judicial Election.

*Election law — Judicial election — Failure of commissioners to provide guard-rails.*

1. The Attorney-General will refuse to recommend to the Governor the allowance of an election contest for a county judgeship based on the failure of the commissioners to provide guard-rails and so arrange the voting-places that none but authorized persons could come within six feet of the ballot-box, where there is no averment of fraud, and it is sought to discard the vote of twenty-eight districts, all of which were carried by the candidate returned as elected, without reference to other districts in which the same conditions admittedly prevailed.

2. The results of a failure of the commissioners to make proper arrangements at the polling-places cannot be corrected by throwing out only the districts carried by one candidate.

3. The candidate returned is not obliged, where such a petition is filed, to set forth in his answer the conditions of the districts carried by his opponent. The petition must be self-sustaining.

4. Where such a petition is presented to the Attorney-General, his duties are not merely ministerial. He must proceed by inquiry and satisfy himself of the facts before he makes any recommendation to the Governor.

Petition of electors of Blair County for contest of election of President Judge of the Court of Common Pleas. Before the Attorney-General.

ALTER, Att'y-Gen., Dec. 28, 1921.—This is a petition to the Attorney-General, asking that proceedings may be had as provided by act of assembly to

determine whether Hon. Thomas J. Baldrige or Robert A. Henderson, Esq., was elected President Judge of the Court of Common Pleas of Blair County at the election held on Nov. 8, 1921.

The averments of the petition show no fraud and no error which would effect any change in the result of the election. The petition is singularly free from any allegation that any illegal vote was cast or any legal vote rejected, or that the certified result does not truly reflect the choice of the voters of the county who participated in the election.

It is not pretended by counsel in their brief submitted on the part of contestant that the case involves any fraud whatever. Referring to Cramer's Election Case, 248 Pa. 208, the brief contains the following language: "It is true that the petition was framed upon the law of that case. If the law be not stated correctly in that decision, we have no grounds for contest."

Aside from the fact that in Cramer's Election Case a large number of votes had been bought and paid for, though probably not for the office in contest, and which could not have the remotest bearing upon the present case, that contest related solely to the arrangement of the space occupied by the election boards, booths and ballot-boxes and the provision of guard-rails in the polling-places.

Thus we have a request for a contest which is to turn upon technicalities alone. There is no averment that any recount of votes would change the result of the election, but the reversal of the result is sought through the discarding of the entire vote of twenty-eight precincts, through certain omissions or informalities, mainly the failure of the county commissioners to provide guard-rails and so arrange the voting-places that none but authorized persons could come within six feet of the ballot-box.

Counsel for the respondent have offered an affidavit, wherein it is averred that a careful canvass of the county shows that numerous other districts were subject to the same criticism which the petitioners make against the twenty-eight districts enumerated in the petition, and that the result of throwing out the votes of the said additional districts, as well as those of the said twenty-eight districts, would be a considerable net gain for Judge Baldrige. This affidavit was received subject to an objection by counsel for the contestant, and, on reflection, I have decided to sustain the objection. I base no finding on the affidavit.

Another affidavit offered by counsel for the respondent, and received subject to the objection of counsel for the contestant, avers that thirty-seven of the seventy-two petitioners, including ten of the fourteen who verified the petition, reside in the districts in which the petition avers that no valid election was held. The law requires that the petitioners shall have voted at the election sought to be contested, and the affidavit is offered not only to show petitioners seeking to set aside, as illegal, something in which they have participated, but also upon the theory that if, as contended, the arrangement and equipment of the voting-places did not permit the casting of any legal votes, then the petitioners residing in said districts, by their own showing, could not have voted at said election. The objection to this affidavit is also sustained. It is evident that the requirement that the petitioners shall have *voted* does not mean that a valid election must have been held in the districts wherein their votes were cast. Otherwise, the similar requirement relating to contests which may involve but a single district could not be complied with if it appeared that the election was wholly invalid.

There was much discussion at the argument as to the extent of the power of the Attorney-General in cases of this character, reference being made to 1 D. & C.

the cases of Cheetham v. McCormick, 178 Pa. 186; Com. ex rel. Smith v. McCormick, 22 Pa. C. C. Reps. 322; s. c., 8 Dist. R. 117; White's Contested Election, 4 Dist. R. 363, and other cases.

I do not think the duty of the Attorney-General extends quite as far, in testing the facts, in a petition for an election contest as in a petition for action to be taken by him against a corporation under the Act of 1887, involved in the case of Cheetham v. McCormick. The Act of 1887 provides that upon receiving the petition therein provided, "it shall be the duty of the said Attorney-General at once to institute proper proceedings," and the Act of 1874, under which this petition is filed, provides that upon the petition being presented to him, he "shall immediately notify the Governor." In each case such discretion as may be vested in the Attorney-General must be implied from the nature of his office and of the situation, not solely from the language of the statute. Cheetham v. McCormick sustains that principle, and holds that the Attorney-General is not to proceed to institute litigation upon the part of the Commonwealth merely upon receiving a petition, though it be in proper form, but that "an inquiry into the facts may satisfy him that the complainants have been misled, or that they really have no information on the subject, but are acting from malicious motives," and "he may see very clearly that to proceed under the act would be unwise, would invite certain defeat and fasten a bill of costs unnecessarily on the Commonwealth." Under such conditions, the court said: "It is the duty of the Attorney-General, under his official oath, to say to the complainants, 'you have no case;' and it is his right to decline to ask for the complainants relief he is satisfied they have no right to."

Probably this reasoning of the court is not fully applicable to an election contest, by reason of the difference in the relation of the Attorney-General to the proposed litigation and the different character of the procedure sought to be instituted. It is equally clear, however, in both cases, that it is not a mere ministerial duty that is to be performed, and in Com. ex rel. Smith v. McCormick, Attorney-General, 22 Pa. C. C. Reps. 322, 8 Dist. R. 117, which was a petition for an election contest, Judge Simonton, after discussing the case of Cheetham v. McCormick, said: "We are unable to see what purpose would be served by requiring the petition to be presented to the Attorney-General if his sole duty were to transmit it to the Governor, and we think the principle of the case above cited ought to apply here."

It seems very plain that the petition should be required to be fully self-sustaining and that the proceedings should bear the clear impress of good faith in every particular. Otherwise, there would be temptation to start a contest where the real reason was a close result and the hope that something might turn up in the course of the investigation.

The law is not concerned here as to whether there was an "undue" or "illegal" election in certain election districts, but whether there was such an election in Blair County. The failure of the county commissioners to arrange and equip polling-places in the manner provided by law being the sole ground on which it is hoped to sustain the contest, and the facts being easy to ascertain, it seems very clear that the extent to which that condition existed should have been set forth in the petition, with the vote in all the districts thus affected, so that we might know what effect the elimination of the vote in all such districts would have upon the result of the election in the county. The petitioner should thus have provided all the information necessary for answering the serious and vital question whether, in the words of Judge Simonton, in Com. v. McCormick, above referred to, "it would be a vain thing

for the Attorney-General to transmit his petition to the Governor, and for him to direct a court to be constituted to try the intended contest."

The petition enumerates twenty-eight districts wherein the commissioners failed to arrange and equip the polling-places according to law, *all of which were carried by Judge Baldrige*, and states what would be the result of discarding all the votes cast in all these districts. But to how many other districts did this failure upon the part of the commissioners extend, and what would be the result of eliminating all of them? That there were other such districts is quite free from doubt.

It would be an incredible coincidence that in this close election, free from fraudulent voting, Judge Baldrige should carry all the districts which were without guard-rails when they were so numerous. The petition does not purport to give all the districts where the arrangement or equipment was defective. If the districts named were the only ones affected, or the only ones known to the petitioners, it would have been very easy to so aver, but there is no such averment. Moreover, in response to my inquiry at the oral argument, counsel for the petitioners stated that the conditions complained of extended to districts which were carried by Mr. Henderson.

The results of a failure of the commissioners to make proper arrangements at the polling-places cannot be corrected by throwing out only the districts carried by one candidate. If the law will sustain the disfranchisement of all the voters in such a district, then this drastic action must be taken in all such districts, and we cannot tell whether it is worth while to summon a tribunal to correct an "undue" election unless the petition states what would be the result of such complete correction. Upon the petitioners rests, very clearly, the burden of justifying the summoning of the tribunal. To give only some of such districts when there are others, to give only the districts carried by one candidate and suppress the fact of other such districts carried by the other candidate, does not seem to have the clear impress of good faith. It surely cannot be contended that the petition is self-sustaining, showing that a contest could change the result of the election. I think where this is not shown as clearly and positively as the nature of the case admits, the Attorney-General should refuse to set in motion the expensive machinery provided for the correction of results. In this respect I think the petition in this case is manifestly defective.

It is argued by counsel for the petitioners that they are only required to show the districts carried by Judge Baldrige, and that the districts carried by Mr. Henderson should appear in the answer, to be considered by the tribunal summoned by the Governor. This argument seems to overlook the serious importance of determining whether there is any clear practical reason for summoning the tribunal. This is not a law-suit between individuals, but a public matter, concerning every voter and taxpayer of Blair County as well as the time and convenience of judges from other counties, who would be taken from their regular duties to sit specially in this case. It involves also the continuation of public controversy and strife. It is peculiarly the kind of litigation which should only be entered upon where there appears to be good and sufficient reason. As said in Skerrett's Case, 2 Parsons, 509: "Should too ready an ear be lent to such complaints, it does not require the spirit of prophecy to divine that elections will rarely terminate with the ordinary functionaries under whose superintendence they are placed, but that courts of justice will be perpetually invoked to assume the office most foreign to their organization—that of umpires between the contestants for public favor at the ballot-box."

1 D. & C.

Cramer's Election Case, already mentioned, has been discussed at length by counsel on both sides. Counsel for the petitioners rely upon it entirely, pointing to its description of conditions similar to those alleged in the petition. Counsel for Judge Baldrige went into the decision very fully, and made a very impressive argument. The decision seems to stand somewhat apart. It is strongly urged by counsel that it is not in harmony with the earlier case of Knight v. Coudersport Borough, 246 Pa. 284, or the later cases of Com. ex rel. Gast v. Kelly, 255 Pa. 475, and West Mahanoy Township's Contested Election, 258 Pa. 176, and that its application in a case free from fraud would work gross injustice. In any event, it seems clear that if, through appropriate proceedings, there should eventually be a trial under the present petition, it would be most helpful to have it preceded by a determination of the effect of that case on the conditions complained of here.

The petition is refused.

From Guy H. Davies, Harrisburg, Pa.