## Bonus Charge on Street Railway Companies

RENO, Attorney General, December 29, 1939.—You inquire whether street railway companies which were in-

corporated under the Act of May 14, 1889, P. L. 211, while the Bonus Act of May 1, 1868, P. L. 108, was in effect, were required to pay bonus by that act.

You state that the filing in your department of an agreement of consolidation and merger between the Philadelphia Rapid Transit Company, the present operating corporation, and its 64 underliers, has revealed that 19 of the underliers were incorporated as above stated and paid no bonus to the Commonwealth.

The Act of 1868, supra, with which we are concerned here, was a general revenue law. This was the first general act imposing bonus upon the grant of corporate franchises and upon increases of capital stock. Section 15 of the act, which relates to bonus, reads as follows:

"That hereafter every company incorporated by or under any general or special law of this commonwealth, *except railroad,* canal, turnpike, bridge or cemetery *companies,* and companies incorporated for literary, charitable or religious purposes, shall pay to the state treasurer, for the use of the commonwealth, a bonus of one-quarter of one per centum upon the amount of capital stock which said company is authorized to have, in two equal instalments, and a like bonus upon any subsequent increase thereof. The first instalment shall be due and payable upon the incorporation of said company, or upon the increase of the capital thereof, and the second instalment one year thereafter; and no company, as aforesaid, shall have or exercise any corporate powers until the first instalment of said bonus is paid; and the governor shall not issue letters patent to any company until he is satisfied that the first instalment of said bonus has been paid to the state treasurer; and no company incorporated by any special act of assembly shall go into operation, or exercise any corporate powers or privileges, nor shall said act be enrolled among the laws of the state until said first instalment of bonus has been paid as aforesaid." (Italics supplied.)

Your inquiry resolves itself into the determination of whether or not the street railway companies fell within the scope of the exemption extended to "railroad companies".

The courts repeatedly have held that the term "railroad company", as used in the statutes of this Commonwealth, does not have a distinct, independent and precise meaning in itself, but that this term is broad enough to include a "street railway company", unless a more restricted meaning is clearly apparent from the title and provisions of a particular act in which the phrase is used.

The rule is well stated in Philadelphia v. Philadelphia Traction Co., 206 Pa. 35 (1903). The question involved in that case was whether the Act of April 21, 1858, P. L. 385, conferred upon the City of Philadelphia the power to tax certain property of street railway companies. The statute expressly provided in section 1 that "the offices, depots, car houses and other real property of *railroad** corporations situated in said city" were subject to taxation by ordinances for city purposes. The court held that this statute permitted the taxation of the property of street railway companies, and in so doing stated as follows (page 39):

"The words 'railway' and 'railroad' have been used indiscriminately by the legislature, and have no strict technical meaning in our statutes. . . . The rule established by our decisions is that these words used in the statutes will be considered as synonymous, and either will be held to apply to both kinds of roads, unless there appears from the title of the act, its purpose or its context something to indicate that a particular kind of a road is intended: Hestonville, etc., Railroad Co. v. Philadelphia, 89 Pa. 210; Gyger v. Phila. City Pass. Ry. Co., 136 Pa.

---

* The court erroneously quoted the statutory language as reading "railway corporations", whereas the statutory language is, in fact, "railroad corporations".

96; Cheetham v. McCormick, 178 Pa. 186; Old Colony Trust Co. v. Transit Co., 192 Pa. 596."

An examination of the Act of 1868, supra, reveals that neither the title nor the nature and purpose of the act, nor any of its provisions, indicates an intention on the part of the legislature to have used the word "railroad" in a restricted sense. The generality of the word "railroad", as used in the Act of 1868, is unquestionable.

The Bonus Act of 1868 was passed at the same session as the Act of April 4, 1868, P. L. 62, which provided generally for the incorporation of railroad companies and expressly provided, in section 12, that it should not be construed to authorize the formation of street passenger railway companies.

While it may be argued that the fact these acts were passed at the same session indicates the intention of the legislature to have used the word "railroad" in the Bonus Act in the same limited sense in which it was used in the Incorporation Act of 1868, we are of the opinion that this is a non sequitur. On the contrary, the legislature, by expressly excluding street railway companies from the scope of an act relating to "railroad companies", clearly indicated that the term "railroad companies" would otherwise have included street railway companies, particularly in view of the court decisions to the effect that the terms "railroad" and "railway" are synonymous, unless there is an indication to the contrary.

Also, an examination of the Incorporation Act of May 14, 1889, P. L. 211, under which the underliers in question were incorporated, clearly indicates that the term "railroad corporation", in its general sense, at that time embraced street railways, in that the terms "railroad" and "railway" are used interchangeably in that act. Thus, in the title and in many of the sections of the act the term "street railway" appears, while in other sections, particularly sections 12 and 13, the terms "railroad" and "railroad corporation" appear.

In Millvale Borough v. Evergreen Ry. Co., 131 Pa. 1 (1890), the question arose as to the types of certain transportation companies. The court commented upon the interchangeable use of the words "railroad" and "railway" in the statute in question as follows (p. 15) :

"In the general law of May 23, 1878, P. L. 111, authorizing the incorporation of street-railway companies, the terms 'railway' and 'railroad' are used indiscriminately, as representing the same thing. Thus, in the title it is 'railway' companies that are mentioned. In the second section it is provided that $2,000 of stock for every mile of 'railroad' shall be subscribed. The sixth section provides that the president and directors of any 'railroad' company organized under the act shall have power to borrow money. The seventh section directs notice to be given for payment of instalments by publication in one or more newspapers published in the county where such 'railroad' shall be located. This form of expression is repeated in the twelfth section, and in the thirteenth the corporation created under the act is called 'railroad corporation.' In the fifteenth section it is referred to as a 'passenger railway company,' and in the sixteenth as 'street passenger railway,' where the structure itself is described. It is perfectly clear, therefore, that in the legislative sense these several modes of expression are used to designate the same thing."

Accordingly, it is clear that at the time of the passage of the Bonus Act of 1868 and the Incorporation Act of 1889, under which the underliers in question were incorporated, the term "railroad", whenever used in its general sense, included a street railway.

The Bonus Act of 1868 provided that letters patent should not be issued to corporations liable to the payment of bonus until the payment of the first instalment. Letters patent were issued to the underliers in question without the payment of bonus. This is a clear indication of the contemporaneous executive construction of the Act of

1868, as applied to street railway companies, particularly in view of the legal presumption that the Governor and the Secretary of the Commonwealth, at that time, properly performed their official acts and duties in the issuance of letters patent. The courts repeatedly have held that the contemporaneous executive construction of an act is entitled to the highest respect and will not be disturbed except for very cogent and persuasive reasons: Commonwealth v. Mann, etc., 168 Pa. 290 (1895) ; Reeves' Appeal, 33 Pa. Superior Ct. 196 (1907) ; Garr et al. v. Fuls et al., 286 Pa. 137 (1926) ; and Commonwealth v. Quaker City Cab Co., 287 Pa. 161 (1926).

As we have previously indicated, this executive construction was in harmony with the meaning of the Act of 1868.

Moreover, the same legislature which enacted the general incorporation act for street railway companies also enacted the Act of May 7, 1889, P. L. 115, which provided for the payment of bonus upon an authorized increase of the capital stock of corporations, and which contained the same exemption for "railroad companies" that appeared in the Act of 1868. If the legislature had intended that this exemption should not apply to street railway companies, it certainly would have so provided at that time. Moreover, the legislature permitted this exemption in the Act of 1868 and the Act of 1889 to continue in effect, without change, until the passage of the General Bonus Act of May 3, 1899, P. L. 189, when the entire exemption was withdrawn. In so doing, the legislature impliedly endorsed the executive construction placed upon the exempting language.

Accordingly, you are advised that the exemption of railroad companies contained in the Act of May 1, 1868, P. L. 108, included street railway companies that were incorporated under the Act of May 14, 1889, P. L. 211, while the Act of May 1, 1868, P. L. 108, was in force.